## FRIGIDAIRE CORPORATION v. GENERAL NECESSITIES CORPORATION.

District Court, E. D. Michigan, S. D. March 23, 1929.

No. 1611.

Cooper, Kerr & Dunham, Drury W. Cooper, and Thomas J. Byrne, all of New York City, and Harry W. Lindsey, Jr., of Chicago, Ill., for plaintiff.

Swan & Frye (by George Rex Frye), of Detroit, Mich., for defendant.

TUTTLE, District Judge. This case originally involved seven patents, but each of them has been withdrawn without prejudice, with the exception of the patent to Wolf, No. 1,337,175 of April 13, 1920, the application for which was filed December 23, 1913. Claims 10, 15, 16, and 18 are alleged to be infringed.

The patent relates to the subject of artificial refrigeration. The fundamental principle of refrigeration which is described in the patent is admitted by both parties to be

old. This fundamental principle comprises the use of a refrigerating coil, a condensing coil, and a compressor which draws gases from the refrigerating coil and compresses them, after which they are cooled to form a liquid in the condensing coil. It was usual in such systems to employ an expansion valve between the refrigerating coil and condensing coil for the purpose of releasing refrigerant into the refrigerating coil, and it was, of course, also customary to provide some motive power for driving the compressor. Various kinds of refrigerants were used in these systems, such refrigerants having the characteristics of changing from liquid to gas when subjected to approximately atmospheric pressure, and from gas to liquid when highly compressed and cooled. It was customary to compress these refrigerating gases to a pressure, the corresponding boiling point of which was above the temperature of the atmosphere.

This general principle was in use for many years in the making of ice and in cooling rooms and large refrigerator boxes in hotels, as well as in refrigerator cars.

These larger systems were followed by smaller ones which could be used in the home. Such smaller systems were constructed and described prior to any date which can be claimed for the patent in suit, and if there was any bridge to cross in making the smaller machines, for household use, Wolf was not the first to cross it.

The thing which is attempted to be covered by the claims in suit is the cooling of the condenser coil by air, as distinguished from cooling by passing water over the coils, as was practiced to a great extent prior to the patentee's date. Plaintiff has, by disclaimer, limited the broader of the claims in suit, namely, claims 10 and 15, to a condenser coil made of ⅜-inch copper tubing (claim 10) or to a metal tubing of not more than ½-inch size (claim 15).

The claims in suit, as allowed by the Patent Office, were as follows:

"10. A refrigerating apparatus comprising in combination, means to compress a refrigerating gas to a pressure, the corresponding boiling point of which is above the temperature of the atmosphere, an atmospherically cooled condenser for condensing the compressed gas, and an expansion chamber into which the liquid is expanded, said parts being connected to form a closed circuit for the refrigerant."

"15. A refrigerating apparatus including in combination, a compressor, an aircooled condenser, and an expansion chamber, said parts being connected to form a closed circuit for the refrigerating agent, and a fan mounted to effect a circulation of air around the condenser and against the compressor.

"16. A refrigerating apparatus including in combination, a compressor, an aircooled condenser, and an expansion chamber, said parts being connected to form a closed circuit for the refrigerating agent, a motor having a shaft connected to the compressor to drive the same, and a fan mounted to effect a circulation of air around the condenser also driven by said motor."

"18. A refrigerating apparatus including in combination, a compressor, atmospherically cooled condenser means, an expansion chamber, a motor to drive said compressor, and a fan mounted to rotate about an axis parallel to the motor and driven thereby to effect a circulation of air around the said means."

After filing of the bill in this suit, during pendency of the case, a disclaimer as to claims 10 and 15 was made by plaintiff, which disclaimer read as follows:

"Your petitioner, therefore, hereby does disclaim from the scope of said claim 10 all refrigerating apparatus which does not have an atmospherically cooled condenser for condensing the compressed gas composed of a considerable length of tubing made of copper of about ⅜ of an inch diameter and having a comparatively thin wall; and does disclaim from the scope of said claim 15 all refrigerating apparatus which does not have an aircooled condenser composed of a considerable length of metal tubing of not more than ½ of an inch diameter and having a comparatively thin wall."

Taking up first the question of infringement, I have no difficulty in finding that any fair interpretation of the claims in suit finds response in defendant's construction. I hold, therefore, that defendant's construction does infringe the claims in suit.

Defendant has raised a question of double patenting because of a disclosure in another patent to Wolf, but here I again hold with plaintiff, as I do not find a condition warranting a holding of double patenting.

Defendant also questions the right of plaintiff to enter the disclaimer which it has entered with respect to claims 10 and 15. In accordance with the rule which has been established in this circuit in the case of Permutit Co. v. Wadham (C. C. A.) 13 F.(2d) 454, and in Michigan Carton Co. v. Sutherland Paper Co. (C. C. A.) 29 F.(2d) 179, I hold that plaintiff was entitled to make the disclaimer. In connection with that holding,

however, I point out certain dangers, which do not appear to have been present in the previous cases considered in this circuit, on the subject of disclaimers. I realize my duty is to follow the rulings established in this circuit—and I cheerfully do so—but I feel I should, with modesty and respect, point out some dangers which are brought to light in this case.

My original thought with respect to disclaimers was that they were intended to save only the things which were contemplated by the broader claims. That is to say, if a patentee had indicated a desire to patent a certain thing or feature, and the Patent Office had intended to give him a patent covering that thing or feature, but the claims as issued had actually been broad enough to cover more than that feature or thing, it was my thought that by disclaimer the patentee could limit his claims so that they did not cover more than he had intended.

The patentee, Wolf, at no time asked for claims covering ⅜-inch copper tubing or copper tubing of less than ½-inch in diameter; there is no evidence or indication that he ever urged any novelty or particular advantage in the use of that size tubing; and therefore the question of whether or not it was new to use such tubing, or whether it was useful or patentable, was never brought to the attention of the Patent Office, and therefore was never passed upon by the Patent Office. The only foundation for the disclaimer is a statement in Wolf's specification that he preferred to use copper tubing of that size. Statements of that kind in patent specifications are common. In patenting a wooden wheel one might say that he preferred to use a certain kind of timber, but that statement, used in the specification of the patent, would not ordinarily lead one to believe that any claim of patentable novelty was made with respect to the use of that particular kind of wood.

Plaintiff has taken this statement in the specification as a basis for the disclaimer, with the result that claims 10 and 15 are brought before this court with the presumption of validity which all claims carry, but without the particular sizes and kind of tubing to which the claims are now limited having ever been passed upon, from the standpoint of novelty and utility, either in substance or in terms, by the Patent Office. The Patent Office never had an opportunity of determining whether or not it was new or patentable to use tubing of that type. It is much more difficult at this date—15 years after the application for patent was filed and nine years after the patent was granted—to determine the question of novelty or patentable invention in a thing that has to do with the kind and size of metal used in the condenser coil.

Another danger in permitting disclaimers such as this one is that of imposing a hardship upon one who, in good faith, interpreted the claims as issued to be invalid. It requires some stretch of the imagination to foresee the entry of a disclaimer limiting the claims to a feature such as the size and material of the tubing used and to enjoin one from continuing in business because he did not foresee that possibility is likely to be inequitable. If stress or importance had been placed upon that feature during prosecution of the application, the patentee might be expected to so disclaim, but such is not the case here.

As I have already stated, I gladly follow the holdings of this circuit and treat the disclaimer with respect to claims 10 and 15 as a perfectly good and proper one, but I make these remarks because it seems to me that the dangers are such that it is well for the courts to construe the statute with respect to disclaimers in a limited way rather than to give the same a very broad interpretation.

We come then to a consideration of the validity of the claims in suit. Defendant has introduced five patents which appeal to me as disclosing the invention of the claims in suit. These patents are Nos. 463,036 to Leslie; 716,091 to Palmer; reissue 4992 to Martin and Beath; 328,784 to Johnson; and 898,-400 to Audiffren.

Some of these patents read better upon certain claims than do others, but all of them disclose generally the invention attempted to be covered by the patent in suit.

The claims in suit read on the patent to Leslie without difficulty and without putting any strained construction thereon. Some of the claims in suit carry the limitation of a fan for forcing air over the condenser coil, and Leslie unquestionably has that feature.

The patent to Palmer, No. 716,091, is the best reference as concerns proof before the court on the subject of its construction having been put into actual use. Mr. Palmer testified in open court and told of the building of something like ten freight cars in which the device of his patent was used. It is true that the device did not go into extensive use, but there were reasons for the failure to put them into such use. There was the factor of the lack of capital, organizations opposing the device, and the fact that the device did not run when the car was stopped. The

whole proposition of changing from using ice for refrigeration has been a slow process for many reasons. I suppose with freight cars, much the same as in kitchens, the railroad equipment was built for refrigerating with ice and one could hardly expect them to go gradually into artificial refrigeration. They would either wholly adopt the new idea or not at all. Railroads do things that way. There is no evidence that the Palmer device was inoperative or unsatisfactory. In fact, Mr. Palmer testified that his devices were satisfactorily operated. He made an operative, useful, and good device which operated the way he claimed it would operate and which air-cooled the condenser coil in the same general way as Wolf did.

I believe the most valuable of these five prior references, in so far as what it taught the world was concerned, was Martin and Beath, reissue No. 4992. Martin and Beath not only taught that the condenser might be air-cooled, but taught also that the most advantageous movement of refrigerant gas through the congealer and condenser was not in excess of sixteen feet per second, and that seems to be the rate of movement generally accepted today. It seems to me that, being informed as to the rate of movement desired, it became a simple, mechanic's job to decide the size of condenser tubing to be used when considering the size of the machine employed. There are some things about the Martin and Beath disclosure which make a little more difficult the reading of the claims in suit upon it, but I really believe that Martin and Beath is the reference which contains the most worthwhile information, and I think it alone is enough to defeat the patent to Wolf.

I have not the idea that Martin and Beath or the other anticipating patents, or Wolf, tell how to build a complete refrigerating mechanism which would be commercially satisfactory today without the work of skilled mechanics in that field. It is a sort of thing that, if all of the figures and drawings which have been collected over the years were destroyed and a man were sent out to produce a marketable device, would cause him no difficulty in making an operable machine, but he would probably make several machines and several drawings and tests before it would be in final or marketable form. I feel that he would have no particular difficulty in working the thing out from the teachings of the art. At least, he would have no difficulty in cooling the condenser coil, either by water or by air.

The evidence shows that plaintiff's engineer went at the job in about that way. He testified that he had received no help from Wolf, and he decided what size of tubing to use by using his own mechanical skill and general knowledge, independent of any teaching from Wolf.

Evidence has been produced as to the amount of money paid for the patent in suit. It appears that $17,000 was paid for some 25 patents and 25 applications, including the patent in suit, and I am not minimizing that amount; nevertheless, it was not substantial, considering the number of patents acquired, and I do not think that any great weight or importance was attached to the patent in suit when it was purchased. There is nothing about the investigation made of the patent at the time it was purchased, along with the large group of other patents, which ought to cause any unusual importance to be attached to the patent in suit.

I am not unmindful of the large sale which air-cooled refrigerating machines have had or which domestic refrigerating machines have had. I do not think that the patent in suit had anything to do with the development of air-cooled machines. The patent was applied for, years elapsed, the patent was granted, more years elapsed, and the art was not revolutionized. Plaintiff is a subsidiary of one of the great, if not the greatest, selling organizations in the world. Its sales of machines having this type of condenser cooling have developed, but not in any startling way. The sales have grown with the development of the household machine. Its sales of refrigerators having water-cooled condenser coils have also increased.

There has been a battle between artificial refrigerating devices. There has been no particular battle between the competing companies who were manufacturing these devices or between air-cooled and water-cooled machines. Instead, the battle has been between the manufacturer of machines and the manufacturer of ice. The machine possesses very many niceties that, independent of the patented combination, would account for the sales made, and that, added to the selling force placed behind it, contributes to the number of them which have been sold. Many things were required to make the machine a success, such as the motor which runs it and the thermostat which controls it. If these devices were not good, the machine would not stay sold, and I think that more effort was required in working out these various points in the making of a good, workable machine

than was required in working out the condenser coil or in deciding whether the coil would be water-cooled or air-cooled. I can see many things that tell the story of why there has been a demand created, but I cannot trace any of it to Wolf; I do not find that Wolf has any part in it whatever.

As to the claims which have been restricted by disclaimer to particular sizes of copper tubing, I hold that those particular sizes of tubing were old. The prior art is full of all the different kinds of condenser coils and expansion coils that we have to-day, in various kinds of material, using various kinds of refrigerants. I cannot help but feel that it would be unfair and improper to allow Wolf to control the ⅜-inch size of copper tubing in that old combination just as it would be unfair to permit a carpenter to control nails of well-known materials and sizes to be used in building houses.

The designer should be permitted to use such size of tubing as the capacity of his machine requires. Something must be left to his judgment in meeting varying conditions as he meets them.

I find many instances of copper tubing being used and instances where the specific sizes in question have been mentioned for refrigerating coils. I find air-cooling was old per se and old in the combination. The use of a fan for air-cooling is old, these fans being placed in many different positions and cooling all the different parts.

I conclude, therefore, that the claims in suit are invalid, and decree may be entered dismissing the bill, with cost to defendant.