**EDWIN L. WIEGAND CO. et al. v. HAROLD E. TRENT CO. et al.**

No. 7330.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

Rehearing Denied Oct. 30, 1941.

Hadley F. Freeman, of Cleveland, Ohio (Freeman Sweet & Albrecht, of Cleveland, Ohio, and Busser & Harding, of Philadelphia, on the brief), for appellants.

Edward H. Davis, of Philadelphia, Pa. (Synnestvedt & Lechner and Harvey L. Lechner, all of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This litigation is what usually ensues between "former" friends. One may generally expect and here one finds a greater bitterness. The plaintiff-appellant is a manufacturer of electrical heating equipment. The individual defendant is an electrical engineer. He worked for various companies in designing and supervising the manufacture of electrical apparatus of one kind or another. In 1927 he incorporated his own company [1] and in the course of filling an order for vulcanizers he had occasion to purchase the plaintiff-appellant's electrical heating units. The association thus initiated ripened into his accepting a sales agency for the defendant for the eastern territory. Defendant's talents seem to have been creative rather than promotive. At any rate, this agency proved commercially unsatisfactory. Accordingly, defendant hired as sales manager the twin brother of plaintiff's sales manager. Even this arrangement did not satisfy the go-getting individual plaintiff. As a result, several meetings between the individual plaintiff, the individual defendant,

---

[1] Now the corporate defendant.

and the aforementioned twins, were held. The witnesses could not even agree as to the number of these conferences much less as to what happened at any of them. It was agreed, however, that after a final conference on April 30, 1929 at a hotel in Philadelphia that the business relationship between the individual plaintiff and defendant was ended and that defendant's erstwhile sales manager was substituted for him as sales agent.

The plaintiff seems to have expected the defendant to retire to starvation. Disappointed by his insistence upon earning his livelihood at the old stand, he brought this suit. We quite agree with the learned trial judge, when in one of the three opinions required of him, he said: "The ingenuity of counsel for the plaintiff has produced so complicated a record and introduced so many new issues that, in order to deal intelligently with this motion to receive disclaimers in evidence, it will be necessary to review the whole course of the proceeding." Entered December 29, 1938, Appendix to Appellees' brief, p. 2.

The first fourteen paragraphs of his amended bill of complaint are in the ordinary form of a suit for the infringement of five patents. The next four are for copyright infringement by the printing and distribution of certain catalogues and the following two are for unfair competition. The unfairness charged is the breach of an oral agreement not to compete, disparagement of title, solicitation of customers, and passing off. The learned district judge in his first opinion and order[2] found all the plaintiff's patents to be invalid and any remedy for the unfair competition and copyright infringement barred by laches and estoppel. He also rather went out of

his way to express his disbelief in the existence of any agreement not to compete. In its second opinion and order[3] the court below allowed disclaimers limiting the scope of most of the claims originally sued upon. It is unnecessary to consider the legal propriety of this action in relation to the "inadvertence, accident or mistake" and "substantially a new patent" rules.[4] This because in his third opinion[5] the learned district judge held that in all but two patents[6] the plaintiff had retained claims "not definitely distinguishable" and as to those two patents he ruled that the alteration by disclaimer only confirmed his original holding.

■ The learned district judge gave most of his, as we think, able attention to the patent phases of the litigation. He thought the three product patents[7] to be anticipated. The invention alleged is for the envelopment and insulation of a wire resistor by a cement-like or porcelain refractory medium. In the earlier heaters, the insulating material is mica.[8] The patent (French) to Luftfahrzeugbau[9] discloses a heating unit "bedded in electrically insulating material".[10] Two patents (British and Swiss) to Muller[11] disclose "a resistance wire wound on a heat-proof insulating plate".[12] The only escape from anticipation must therefore lie in the substitution of the precise material. We are in accord with the learned district judge in his view that the use of such material for analogous purposes was extensive and well-known.[13] In his process patents the plaintiff did not confine himself to the electric heating art and so laid himself open to anticipation by a patent for the manufacture of spark plugs.[14] Two patents to this plaintiff[15] and the latter pre-

---

[2] Filed September 14, 1938, Appendix to Appellants' brief p. 33.

[3] Filed December 29, 1938, Appendix to Appellee's brief, p. 2.

[4] 35 U.S.C.A. §§ 65, 71, and cases cited; Michigan Carton Co. v. Sutherland Paper Co., 6 Cir., 29 F.2d 179; cf. Frigidaire Corp. v. General Necessities Corp., D.C., 32 F.2d 277.

[5] Filed September 27, 1939, Appendix to Appellants' brief, p. 42.

[6] Patents to Wiegand, No. 1,614,330; No. 1,312,657.

[7] Patents to Wiegand, No. 1,614,330, No. 1,614,331, No. 1,614,938.

[8] "Any of a group of minerals, silicates of aluminum with other bases, that

separate readily into thin, tough, often transparent, and usually elastic laminae", 1 New Century Dictionary p. 1055; Appendix to Appellants' brief p. 269.

[9] Patent No. 517,311.

[10] Appendix to Appellants' brief p. 268.

[11] British Patent No. 1,614,330; Swiss Patent No. 83,457.

[12] Appendix to Appellants' brief pp. 262, 264.

[13] Re Smith's Application (1896), 13 R.P.C. 200; Re Zucker's Application (1927), 44 R.P.C. 257, 262.

[14] Patent to Anderson No. 966,784.

[15] Patents to Wiegand, No. 1,312,657; No. 1,613,426.

scribe the introduction of an element into a molten or impressionable mass and the subjection of that mass to pressure.

■ After the district court filed its original opinion holding all the plaintiff's patents invalid, the respondent entered partial disclaimers as to all the patents. Three of these[16] are ruled by Maytag Co. v. Hurley Machine Co.[17] In that case the Supreme Court determined the procedure that must be followed in disclaiming invalid patent claims. It was there held that where two claims are indistinguishable, and one is invalid, the other must be promptly disclaimed or suit brought to determine its validity. The purpose of this rule is obvious. As has been said: "Despite the additional burden placed on the patentee, the present decision (the Maytag case) can perhaps be justified; for it prevents a patentee from filing multiple descriptions of the same invention, in the hope that when one is adjudged invalid, the others can preserve the assertion of monopoly merely because different terminology was employed. But if such is the rationale of this case, then notice of the invalidity of an indistinguishable claim should be imputed from the court decree and not from the disclaimer. To conceive of disclaimers as binding admissions seems undesirable, since it will discourage their use; hence, it is to be hoped that the doctrine of the case will not be extended to voluntary disclaimers filed prior to litigation of that phase of the patent". Patents-Disclaimer-Effect on Unlitigated Claims of Disclaimer of Indistinguishable Claim Previously Adjudicated Invalid, 53 Harvard Law Review 145, 147.[18]

■ Here the plaintiff attempted to do just what the Supreme Court said he must not do. After his claims were declared invalid he did not bring another suit as he might have. Instead he chose the other alternative, disclaimer. He cannot ostensibly surrender his monopoly by failing to disclaim a claim "not definitely distinguishable". An even cursory comparison of the claims is all that is necessary to establish how indistinguishable they are. In Patent No. 1,613,426, the difference is between "artificially compacting insulating material and compacting it by pressure".[19] In Patent No. 1,614,331 "a marginal flange is turned over in one claim and connected in another".[20] In Patent No. 1,614,938 the asserted distinction is between a "heating element generally and a heating element in the form of a strip".[21] The learned district judge found the disclaimers of Patents No. 1,614,330 and 1,-312,657 did not come within the Maytag rule. He did not, however, feel that the alterations were sufficient to change his original holding of invalidity. Nor do we. As to the latter patent, the change described only "holding the element in formation", something which in view of its character would have to be done anyway. The narrowing in the case of the former does not, in our view, meet the issue of the mere substitution of material.

■ The action in unfair competition has, in our opinion, even less merit. The unfairness consists, according to the complaint, in breach of a contract not to compete, disparagement of goods, use of lists of customers, and solicitation therefrom, and copying of catalogues. In our view, the learned district judge need not have resorted to laches, acquiescence and estoppel as his principal ratio decidendi in disposing of this part of the case. Under the demeanor rule[22] we are bound to accept his finding that there never was any contract not to compete. Even if there had been, no liberalization of pleading can, we think, cover the method plaintiff adopted here. It is true that a breach of an agreement not to compete can be charged as unfair competition to persons inducing it.[23] As against the agreeing party, how-

---

[16] Patents to Wiegand, No. 1,613,426; No. 1,614,331; No. 1,614,938.

[17] 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1204.

[18] Patents — Disclaimer — Position of Patentee on Appeal After Adverse Decision in Lower Court, 4 George Washington Law Review 153; The Duty to Disclaim After a Patent Claim Is Adjudged Invalid, 5 George Washington Law Review 243; Delay in Filing Statutory Disclaimers of Patent Claims, 14 Temple Law Quarterly 380.

[19] Appendix to Appellants' brief, p. 331.

[20] Appendix to Appellants' brief, p. 318.

[21] Appendix to Appellants' brief, p. 321.

[22] Blume, Review of Facts in Non-Jury Cases, Proposed Federal Rule 68, 20 Journal of American Judicature Society 68.

[23] Nims, Unfair Competition and Trade-Marks, 3d Ed., § 172a.

ever, the remedy is plainly for specific performance of the negative covenant.[24] Finally although the general vagueness of the testimony about the contract leave its supposed terms difficult of ascertainment, nevertheless the public policy against these types of unrestricted contracts makes its possible enforcement doubtful anyway.[25]

 The derogatory remarks attributed to the defendant fall far short of the trade libel. While it is true that the plaintiff need not allege and prove special damage,[26] equity may not act if the plaintiff shows no present or possible injury. Damage to the plaintiff could result only if defendant's remarks were made public. The statements in question were not made to potential customers of the plaintiff but to plaintiff's representatives. The representatives were in the same position as defendant to know the truth or falsity of the statements. Further, these representatives all ceased to sell defendant's products and continued to sell plaintiff's. Plaintiff failed to prove disparagement since it failed to show the necessary "statement about a competitor's goods which is untrue or misleading, and which is made to influence, or tends to influence the public not to buy".[27]

 The rule is quite clear that the solicitation of customers and use of customers lists is permissible unless there is a breach of an express contract or violation of some confidence.[28] There must be some element of fraud or trade secrecy involved. This was clearly absent in the present case since the lists were not exclusively those of the plaintiff. As the representatives had also handled defendant's goods, the defendant had as much right to the lists as did the plaintiff. The writer of a law review note says: "An employee, in the absence of an express contract, may solicit or accept customers of his former employer, but to prevent unfair competition equity will restrain the disclosure of processes of manufacture either on the theory of an implied contract not to disclose such confidential information, or that a disclosure would constitute a breach of trust. At early common law, all express covenants not to compete were void as being in restraint of trade. At present, New York and other jurisdictions will enforce a negative covenant in a contract of employment if the employee is making use of information of a secret nature obtained in the course of his employment, such as lists or knowledge of customer's names and addresses, or information as to methods of doing business. Other jurisdictions, however, deny relief in many of these cases on the ground that nothing tangible has been taken, or that the ordinary customer's list is not a trade secret. But equity is not protecting mere names and addresses easily ascertainable by observation or by reference to directories." Siegel, Equity-Employment Contracts-Enforcement of Negative Covenants, 11 New York University Quarterly Review 470, 470-471.[29]

---

[24] Specific Performance of Employee's Contract Not to Compete After a Term of Employment, 41 Harvard Law Review 782. There is some doubt of this in England. Mason v. Provident Clothing and Supply Co., [1913] A.C. 724; Morris v. Saxelby, [1916] 1 A.C. 688; Atwood v. Lamont, [1920] 3 K.B. 571; Bowler v. Lovegrove, [1921] 1 Ch. 642; East Essex Farmers v. Holder, [1926] W.N. 230.

[25] Carpenter, Validity of Contracts Not to Compete, 76 University of Pennsylvania Law Review 244; Enforcibility of Contracts Not to Compete After a Term of Employment, 28 Columbia Law Review 81.

[26] Black & Yates, Inc. v. Mahogany Association Inc., 3 Cir., — F.2d —. (Not released by court at date of publication. Rehearing granted Aug. 18, 1941.)

[27] Nims, Unfair Competition by False Statements or Disparagement, 19 Cornell Law Quarterly 63, 70.

[28] Right, in Absence of Express Contract, to Enjoin Former Employer from Soliciting Complainant's Customers, 23 A.L.R. 423; 34 A.L.R. 399; Colonial Laundries v. Henry, 48 R.I. 332, 138 A. 47, 54 A.L.R. 343; Connelly v. Special Road & Bridge Dist., 99 Fla. 456, 126 So. 794, 71 A.L.R. 923; Di Angeles v. Scauzillo, 287 Mass. 291, 191 N.E. 426, 93 A.L.R. 1318; Port Invest. Co. v. Oregon Ins. Co., 163 Or. 1, 94 P.2d 734, 124 A.L.R. 1342; Woolley's Laundry v. Sitva, 304 Mass. 383, 23 N.E.2d 899, 126 A.L.R. 752.

[29] Basis of Jurisdiction for the Protection of Trade Secrets, 19 Columbia Law Review 233; Developments in the Law —Unfair Competition, 46 Harvard Law Review 1171; Injunction—Unfair Competition—Solicitation of Customers of Former Employer, 21 Virginia Law Review 330; Unfair Competition—Solicitation of Employer's Customers—Action at

Passing off may be accomplished just as much through advertising as through the use of misleading names, labels, etc. In the principal case, however, we do not think that the defendant's catalogues come within this ban. The catalogues are similar in general arrangement and color. The names of the manufacturers are printed in outstanding letters across the face of the catalogues and appear in the upper corners of many pages. The devices referred to in them are of course different and the reference is generally made in association with the manufacturer's name. The only real similarity, therefore, lies in the color which in both instances is orange. As one might expect from the conventional portrayal of flames, the heating trade is much addicted to the use of this color. That being so, this resemblance may be disregarded.[30]

Perhaps to be sure that he had covered everything, the plaintiff included an action for copyright infringement. It is true that in some instances defendant's catalogues appropriated the discussion in plaintiff's catalogues. It is clear however, that here, if anywhere, prompt action by the injured party is essential.[31] Although plaintiff knew of defendant's catalogue in December, 1930, a short time following its first printing, the plaintiff made no protest or complaint until over three years later when suit was filed. During these three years the defendant had incurred great expense in the printing and distribution of the catalogues. It is well settled that "consent, whether express or implied from long acquiescence with knowledge of the infringement, will prevent relief in equity on the principle of estoppel."[32] Therefore, we quite agree with the learned district judge that the plaintiff through his delay is barred from now asserting his claim of infringement.

The judgment of the district court is affirmed.

Law, 22 Virginia Law Review 359; Trade Regulation—Right of Employer to Enjoin Former Employee From Soliciting Employer's Customers, 37 Michigan Law Review 505; Trade Secrets: Solicitation of Customers by Former Employee, 29 Kentucky Law Journal 247.

[30] Joseph Schlitz Brewing Co. v. Houston Ice & B. Co., 5 Cir., 241 F. 817; A. G. Morse Co. v. Walter M. Lowney Co., D.C., 256 F. 935.

[31] Amdur, Copyright Law and Practice (1936) 1041–1946.

[32] 13 C.J. 1171 and 18 C.J.S., Copyright and Literary Property, § 130, page 244; cf. Trade Marks—Infringement—Laches, 27 Georgetown Law Journal 240.