**WOLVERINE PROCTOR & SCHWARTZ, INC.,**
et al., Plaintiffs,

v.

**AEROGLIDE CORPORATION,**
Defendant.

No. CIV.A.03–11372–NG.

United States District Court,
D. Massachusetts.

Dec. 7, 2005.

Terence D. Friedman, Maupin Taylor PA, Raleigh, NC, for Aeroglide Corporation, Defendant.

James E. Gates, Maupin Taylor PA, Raleigh, NC, Sarah B. Herlihy, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Michael C. Lord, Maupin Taylor PA, Raleigh, NC, John T. Williamson, Maupin Taylor, P.A., Raleigh, NC, for Aeroglide Corporation, Defendant.

## ORDER

GERTNER, District Judge.

Order entered granting Motion for Summary Judgment, finding moot Report and Recommendations, adopting Report and Recommendations.

### *AMENDED REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT*

DEIN, United States Magistrate Judge.

## I. *INTRODUCTION*

In this action, plaintiff Wolverine, Proctor & Schwartz, Inc. ("Wolverine") alleges that the defendant, Aeroglide Corporation ("Aeroglide"), breached its contractual obligations and misappropriated Wolverine's confidential and trade secret information by hiring Wolverine's former employee and using his knowledge of Wolverine's proprietary information to develop a competing product.[1] The plaintiff, by its Verified Complaint ("Complaint"), has asserted claims against Aeroglide for breach of contract (Count I), breach of the implied cove-

Claire S. Bishop, Foley & Lardner, Thomas I. Elkind, Foley & Lardner, LLP, Andrew K. Goldstein, Foley & Lardner, LLP, Boston, MA, for Wolverine Proctor & Schwartz, Inc., Plaintiff.

---

**1.** Stanley Serosky, an employee of Wolverine, also is named as a plaintiff in this litigation. However, in September 2003, the parties stipulated to the dismissal of Count V of the plaintiffs' Verified Complaint, in which the plaintiffs had sought a declaratory judgment ruling that neither Wolverine nor Stanley Se- rosky had violated the terms of an employment agreement between Mr. Serosky and his former employer. Mr. Serosky is not otherwise involved in this dispute. Consequently, all references to the "plaintiff" are to Wolverine.

nant of good faith and fair dealing (Count II), misappropriation of confidential information and trade secrets (Count III) and unfair competition pursuant to Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count IV). Presently before the court are the parties' cross-motions for partial summary judgment. By its motion (Docket No. 46), defendant Aeroglide is seeking summary judgment on Counts I and II of the Complaint, as well as partial summary judgment on Count IV. Wolverine in its motion (Docket No. 51) is seeking summary judgment on Count I of the Complaint. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Aeroglide's motion be ALLOWED and Wolverine's motion be DENIED.

## II. STATEMENT OF UNDISPUTED FACTS [2]

Plaintiff Wolverine is a Delaware corporation that designs and manufactures processing equipment for the food, chemical, tobacco, textile and web-processing industries. (DF ¶ 1). Defendant Aeroglide is a North Carolina corporation that has been a competitor of Wolverine for over thirty-five years. (Id. ¶¶ 1, 2). Aeroglide's principal business consists of manufacturing, selling, and servicing industrial process toasters, driers and coolers for the food industry. (Id. ¶ 1).

### The Confidentiality Agreement

In November 2000, Wolverine, both directly and through an agent, contacted Aeroglide regarding the possible sale of Wolverine to Aeroglide. (Id. ¶¶ 3, 4). After Aeroglide's President expressed an interest in a potential transaction, the parties negotiated a Confidentiality Agreement, which Aeroglide executed and mailed to Wolverine's agent. (Id. ¶ 5; Exhibit 1B to Def.'s Ex. IV).[3] Pursuant to the Agreement, Aeroglide agreed to maintain the confidentiality of certain information that Wolverine's agent would furnish to Aeroglide in connection with its potential purchase of Wolverine. (Exhibit 1B to Def.'s Ex. IV). In addition, the Confidentiality Agreement contains a non-solicitation clause, which reads in relevant part:

> [Aeroglide] agrees not to, either directly or indirectly, solicit any employees employed by [Wolverine] or any of its subsidiaries as of the date of this Confidentiality Agreement, with the exception of employees who respond to a general advertisement for employment placed by [Aeroglide] that is not directed to any specific group or employees who contact [Aeroglide] without solicitation by [Aeroglide].

(Id. ¶ 8). Although the parties did exchange some information, and Aeroglide ultimately submitted a proposal for the acquisition of Wolverine, no deal was ever consummated. (DF ¶¶ 6, 7).

### The Employment of David Shields

David Shields ("Shields") began working for Wolverine in 1993. (Id. ¶ 8). In 2000,

---

2. The facts are derived from Aeroglide's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment (Docket No. 48) ("DF") and Exhibits attached thereto ("Def.'s Ex. ___"), as well as from Wolverine's Statement of Material Facts (Docket No. 53) ("PF") and the attached Exhibits ("Pl.'s Ex ___").

3. The copy of the Confidentiality Agreement that Aeroglide submitted to the court as part of the summary judgment record contains the signature of Aeroglide's President, but does not contain the signature of Wolverine's agent. Nevertheless, there is no dispute that the parties entered into a valid and binding agreement and that the relevant portions of the copy that has been filed with the court accurately reflect the parties' final contract.

Shields decided to leave his job as a Sales and Product Manager at Wolverine in the United Kingdom in order to seek employment in the United States. (*Id.*). Shields wished to leave Wolverine because he believed Wolverine was having financial difficulties, he was experiencing conflict with his immediate supervisor, and he had a girlfriend in the United States. (*Id.* ¶ 9). Accordingly, in late 2000, Shields began a job search by posting his resume and searching on the internet. (*Id.* ¶ 11).

Subsequently, in about January 2001, Shields met with a friend, Simon Campbell ("Campbell"). (*Id.* ¶ 12). During the meeting, Shields asked Campbell to let him know if Campbell learned of any job opportunities for Shields in the United States. (*Id.* ¶ 13; PF ¶ 29). Shields did not ask Campbell to contact any employers on his behalf. (PF ¶ 29).

Campbell was never employed by or had any business relationship with Aeroglide. (DF ¶ 12; Def.'s Ex. VIII ¶ 7). However, one of Campbell's friends and former colleagues, Andy Sharpe ("Sharpe"), was the manager of an Aeroglide facility in the United Kingdom. (DF ¶ 14; Def.'s Ex. VIII ¶ 5). Following his discussion with Shields, Campbell contacted Sharpe to ask whether Aeroglide would have an interest in speaking to Shields about possible employment. (DF ¶ 14; Pl.'s Ex. II at 25). Sharpe told Campbell that Aeroglide "would be delighted to entertain a resume" from Shields.[4] (Pl.'s Ex. II at 25–26). Thereafter, Campbell called Shields to suggest that Shields call Sharpe and to give Sharpe's telephone number to Shields. (Pl.'s Ex. III at 17; Def.'s Ex. VI ¶ 4; Def.'s Ex. VIII ¶ 5).

On about January 25, 2001, Shields called Sharpe to ask about employment opportunities with Aeroglide. (PF ¶ 34; Def.'s Ex. VI ¶ 5). Sharpe told Shields that if his plans to leave Wolverine ever solidified, he should submit a resume and formal request for consideration to Aeroglide. (DF ¶ 17; Def.'s Ex. VI ¶ 5). Not long after this telephone call, Shields decided to formally pursue employment opportunities with Aeroglide and other potential employers. (DF ¶ 18). Accordingly, on about February 19, 2001, Shields mailed a letter and resume to Sharpe at his office in the United Kingdom. (*Id.*, PF ¶ 35). Sharpe then forwarded Shields' resume to Aeroglide's offices in North Carolina. (DF ¶ 18).

After receiving Shields' resume, Aeroglide's President and two of its employees conducted telephone interviews of Shields. (DF ¶ 19; PF ¶ 35). Before inviting Shields to the United States for interviews, Aeroglide's President inquired about the circumstances of Shields' initial contact with Aeroglide, and satisfied himself that Shields had come to Aeroglide "of his own accord." (DF ¶ 21; Def.'s Ex. VII at 26). In April 2001, Shields flew to the United States to interview with Aeroglide and another company. (DF ¶ 22). Aeroglide offered Shields a job, which Shields accepted in mid-April 2001. (DF ¶ 23).

Shields resigned from Wolverine in May 2001. (*Id.*). After Shields announced his resignation, but before he began working for Aeroglide, Wolverine's President contacted him to inform him about the existence of the Confidentiality Agreement and Aeroglide's potential liability under that Agreement if Shields went to work for the defendant. (DF ¶ 24). Nevertheless,

---

4. The record does not support Wolverine's statements that Aeroglide asked Campbell to recruit Shields, that Sharpe told Campbell to give Shields his telephone number, or that Sharpe told Campbell to have Shields call him at Aeroglide regarding possible employment. (*See* citations supporting PF ¶¶ 12, 15, 17, 19, 21 and 32).

on about June 14, 2001, after an Aeroglide employee told Shields that the company was not in breach of the Confidentiality Agreement, Shields began work at Aeroglide's North Carolina plant. (DF ¶¶ 24–25).

## III. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (internal citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996) (internal citations and quotation omitted). In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (internal citations and quotations omitted). In evaluating motions for summary judgment, however, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004) (internal citation omitted).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194, 197–98 (D.Mass.1991).

### B. Count I: Breach of Contract

In Count I of the Complaint, Wolverine alleges that Aeroglide "breached the Confidentiality Agreement by soliciting and employing Shields and by using confidential information known by Shields to develop a product to compete with Wolverine's Jetzone oven." Complaint (Docket No. 1) ¶ 26. Both parties have moved for summary judgment on this Count in connection with the claim of wrongful hiring.[5]

Under Massachusetts law, the interpretation of an unambiguous contract presents a question of law for the court. *See Allstate Ins. Co. v. Bearce*, 412 Mass. 442, 446–47, 589 N.E.2d 1235, 1238 (1992).

---

5. The parties have not addressed the claim of misuse of confidential information in connection with the cross-motions for summary judgment. Therefore, despite broader allegations in the Complaint, Counts I, II, and the part of Count IV at issue in these motions will be deemed to be limited to the hiring of Shields. The claim of misuse of confidential information shall be considered to have been raised solely in connection with Count III (Misappropriation of Confidential Information and Trade Secrets) and that part of Count IV which is not at issue in these motions for summary judgment.

"It is also elementary that an unambiguous agreement must be enforced according to its terms." *Schwanbeck v. Federal–Mogul Corp.*, 412 Mass. 703, 706, 592 N.E.2d 1289, 1292 (1992). The parties agree that the non-solicitation provision of the Confidentiality Agreement is unambiguous. By its terms, the Agreement prohibits Aeroglide from soliciting "either directly or indirectly," any of Wolverine's employees. Moreover, the Agreement specifically carves out as an exception to this prohibition any Wolverine employees "who contact [Aeroglide] without solicitation by [Aeroglide]."

■ The issue raised by the parties' cross-motions for summary judgment on Wolverine's breach of contract claim is whether or not Aeroglide indirectly solicited Shields for employment in violation of the Confidentiality Agreement. According to Aeroglide, it is entitled to summary judgment on the breach of contract claim because the evidence shows, beyond dispute, that Aeroglide did not solicit Shields at all. Aeroglide further argues that Shields, first through Campbell and then on his own, " 'contacted' Aeroglide about employment, without having been 'solicited' by Aeroglide to do so," which is specifically authorized by the terms of the Confidentiality Agreement. Def.'s Mem. at 6–7.[6] Wolverine, on the other hand, argues that Aeroglide breached the terms of the Confidentiality Agreement because it used Campbell as an agent to solicit Shields indirectly. *See* Pl.'s Mem. at 4–5.[7] Specifically, Wolverine argues that "Sharpe, after hearing that Shields was interested in leaving Wolverine, said that Aeroglide would be delighted to entertain

a resume from Shields and told Campbell to pass his phone number at Aeroglide on to Shields." *Id.* at 3–4. Wolverine contends that Sharpe's request to Campbell constituted an indirect solicitation of Shields for employment in violation of the Confidentiality Agreement. *See id.* at 4–5. This court finds that Wolverine's scenario in which Sharpe told Campbell to have Shields call him, and that Campbell was an agent of Aeroglide, is not supported by the evidence. Moreover, this court concludes that the undisputed facts establish that Aeroglide did not solicit Shields, either directly or indirectly, and that Aeroglide is entitled to judgment as a matter of law on the breach of contract claim.

As detailed above, the uncontroverted facts of this case demonstrate that Campbell was a personal friend of Shields and was not an agent of or otherwise affiliated with Aeroglide. Campbell initiated the call to Sharpe, a personal contact of Campbell's, to inquire about employment opportunities for Shields. Considering the evidence in the light most favorable to Wolverine, during this conversation, Sharpe told Campbell that Aeroglide "would be delighted to entertain a resume" from Shields. Campbell then, on his own, gave Sharpe's telephone number to Shields and suggested that Shields may want to call Sharpe. When Shields did call Sharpe, Sharpe did no more than tell Shields to send in a resume if his plans to leave Wolverine solidified. Such conduct does not constitute "solicitation" by Aeroglide at all. Moreover, it fits into the contractual exception for Wolverine employees who contact Aeroglide without that company's solicitation.

---

6. "Def.'s Mem." refers to Aeroglide Corporation's Memorandum of Law in Support of Motion for Partial Summary Judgment (Docket No. 47).

7. "Pl.'s Mem." refers to Wolverine's Memorandum of Law in Support of its Motion for Partial Summary Judgment and Opposition to Aeroglide Corporation's Motion for Partial Summary Judgment (Docket No. 52).

■ The parties agree that the term "solicitation" "is defined as 'the act or an instance of requesting or seeking to obtain something; a request or petition.'" Pl.'s Mem. at 4 (quoting Black's Law Dictionary 653 (2d Pocket ed.2001)); Def.'s Reply Mem. at 8.[8] *Accord Oceanair, Inc. v. Katzman*, 2002 WL 532475, 14 Mass. L. Rep. 414, at *6 (Mass.Super.2002). Simply responding to a request for information does not constitute solicitation. *Id.* "[T]here is plainly a real difference" between the company "initiating a telephone call or meeting with [the employee] and the [employee] initiating that contact himself." *Getman v. Usi Holdings Corp.*, No. 05–3286–BLS2, 2005 WL 2183159, at *4 (Mass.Super. Sept. 1, 2005).[9] Where, as here, Campbell and then Shields initiated the contact with Aeroglide, and Sharpe merely responded to the contacts and, even then, did not attempt to persuade Shields to join Aeroglide, there was no effort by Aeroglide to solicit Shields' services, either directly or indirectly. *Compare State Street Corp. v. Barr*, 10 Mass. L. Rep. 599, at *12–14 (Mass.Super.1999) (where former employees prohibited from direct or indirect solicitation of plaintiffs' principals made calls to principals, and headhunter also called principals on behalf of former employees' new company, evidence supported plaintiff's claim that non-solicitation agreement was violated).

■ The additional language contained in the non-solicitation clause further mandates the conclusion that there is no breach in the instant case. By creating an exception for Wolverine "employees who contact [Aeroglide] without solicitation by [Aeroglide]," the parties to the Confidentiality Agreement demonstrated an intent to allow Aeroglide to pursue Wolverine employees who approached Aeroglide on their own. This is precisely what occurred in this case.[10] Wolverine ignores this limitation in the Agreement and seems to contend that the ban on "indirect solicitation" renders this exception meaningless. However, an unambiguous contract must be enforced according to its terms, and this provision cannot simply be ignored. Consequently, this court finds that Aeroglide did not breach the Confidentiality Agreement, and, accordingly, recommends that Aeroglide's motion for summary judgment on Count I of the Complaint be allowed and that Wolverine's motion for summary judgment on Count I be denied.

## C. *Count II: Breach of Implied Covenant of Good Faith and Fair Dealing*

Aeroglide also seeks summary judgment on Count II of the Verified Complaint, in

---

8. "Def.'s Reply Mem." refers to Aeroglide's Response to Wolverine's Motion for Partial Summary Judgment (Docket No. 58).

9. Wolverine argues that the instant case fits within *Getman's* definition of prohibited conduct because Sharpe, the employer, requested Shields' resume via Campbell, and, therefore, "Shields did not initiate the contact with Aeroglide." *See* Docket No. 69 at 1. This misstates the record and ignores the fact that Campbell contacted Aeroglide on behalf of Shields, and that Shields then contacted Aeroglide on his own. Here, the employee initiated the contact himself.

10. Public policy favors a narrow interpretation of covenants restraining employment. *See Woolley's Laundry v. Silva*, 304 Mass. 383, 387, 23 N.E.2d 899, 901 (1939) ("contracts restraining freedom of employment can be enforced only when they are reasonable, not wider than is necessary for the protection to which the employer is entitled, and not injurious to the public interest."). Accordingly, it would be inappropriate to read the agreement broadly, and to expand its terms beyond their meaning so as to prohibit discontented employees such as Shields from seeking employment with Aeroglide where Aeroglide made no effort to contact Shields.

which Wolverine alleges that the solicitation of Shields constitutes a breach by Aeroglide of the implied covenant of good faith and fair dealing in the Confidentiality Agreement. Compl. ¶ 31. This court recommends that Aeroglide's motion as to Count II be allowed as well.

■■■ "Every contract implies good faith and fair dealing between the parties to it." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991) (quotations and citations omitted). This "implied covenant of good faith and fair dealing provides that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract ....' " *Id.* (quoting *Druker v. Roland William Jutras Assocs.*, 370 Mass. 383, 385, 348 N.E.2d 763 (1976)). "A party may breach the covenant of good faith and fair dealing implicit in every contract without breaching any express term of that contract." *Speakman v. Allmerica Fin. Life Ins.*, 367 F.Supp.2d 122, 132 (D.Mass. 2005). However, because "[t]he requirement of good faith performance is ... circumscribed by the obligations of the contract ... the covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." *Id.* "Nor does the covenant apply where the defendant has exercised an express contractual power in good faith—that is, in a manner that comports with the parties' reasonable expectations as to performance." *Id.* and cases cited.

As detailed above, the undisputed facts establish that Aeroglide did not violate, but rather acted in accordance with, its Agreement with Wolverine.[11] Accordingly, nothing in the record supports a claim that Aeroglide acted in such a way as to deprive Wolverine of the fruits of the Confidentiality Agreement. This court recommends, therefore, that Aeroglide's motion for summary judgment be allowed with respect to Count II of the Complaint.

## D. *Count IV: Unfair Competition*

■■■ Finally, Aeroglide seeks partial summary judgment on Wolverine's claim of unfair competition to the extent that it is based on Aeroglide's alleged breach of the Confidentiality Agreement or its alleged breach of the implied covenant of good faith and fair dealing. Mass. Gen. Laws ch. 93A, §§ 2 and 11 "make unlawful 'unfair or deceptive acts or practices in the conduct of any trade or commerce' between two businesses." *Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 403 Mass. 722, 729, 532 N.E.2d 660, 664 (1989). In certain circumstances, harmful actions taken in disregard of known contractual arrangements can constitute a violation of Mass. Gen. Laws ch. 93A. *See, e.g., Wang Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 857–59, 501 N.E.2d 1163, 1165–66 (1986) (employee's willful interference with known contractual arrangement for purpose of benefiting employer was "unfair to [plaintiffs] within the prohibitions of G.L. c. 93A, §§ 2 and 11"). Here, however, the plaintiff has not established that the defendant failed to comply with its contractual obligations or that it acted in disregard of those obligations. Therefore, this court recommends that Aeroglide's partial motion for

---

**11.** Wolverine does not challenge any conduct on the part of Aeroglide other than the hiring of Shields. The sum total of Wolverine's argument as to Count II is the conclusory assertion that there are issues of fact that remain in dispute, and that the (undefined) "undisputed material facts would support a finding of breach of the implied covenant in this case." Pl.'s Mem. at 7.

summary judgment as to Count IV of the Complaint be granted.

## IV. CONCLUSION

This court finds that as a matter of law, the defendant neither breached the terms of the parties' Confidentiality Agreement nor breached the covenant of good faith and fair dealing implied therein. Accordingly, this court recommends to the District Judge to whom this case is assigned that Aeroglide's motion for summary judgment (Docket No. 46) be ALLOWED and that Wolverine's motion for summary judgment (Docket No. 51) be DENIED.[12]

November 21, 2005.

---

**12.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).