JOHN R. SCHWANBECK *vs.* FEDERAL-MOGUL CORPORATION
& another.[1]

Suffolk. February 3, 1992. - May 27, 1992.

Present: NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contract*, What constitutes, Offer and acceptance. *Frauds, Statute of.*

In negotiations between a prospective buyer and the seller of the assets of
a business, language in a letter of intent subscribed by the parties, ex-
pressing an intention "to proceed in good faith in the negotiation of [a]
binding definitive agreement," did not bind the parties contractually.
[705-707]

A draft agreement for purchase and sale of real and personal property
constituting the assets of a business, which had been initialled on behalf
of the seller and the buyer but which left unstated the value and attrib-
utes of certain preferred stock that was contemplated as part of an un-
differentiated purchase price, was insufficient to satisfy the Statute of
Frauds and thus did not constitute an "enforceable offer" for purposes
of a right of first refusal held by a different prospective buyer with
whom the seller had been negotiating previously. [707-710]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 2, 1981.

The case was heard by *Cortland A. Mathers*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*John M. Harrington, Jr.* (*John C. Bartenstein* with him)
for the plaintiff.

*Michael P. Angelini* (*Vincent F. O'Rourke, Jr., & Barry
A. Bachrach* with him) for Vellumoid, Inc.

*Samuel Adams* (*Ralph T. Lepore, III*, with him) for Fed-
eral-Mogul Corporation.

---

[1] Vellumoid, Inc.

NOLAN, J. This action arises out of failed negotiations between the plaintiff and the defendant, Federal-Mogul Corp., for the purchase and sale of Federal-Mogul's Vellumoid Division (division), which Federal-Mogul eventually sold to another party (buyer), who organized a new corporation, the defendant Vellumoid, Inc. The plaintiff alleged in his complaint that Federal-Mogul breached an agreement to negotiate in good faith with the plaintiff and to honor the plaintiff's right of first refusal; defrauded the plaintiff; and violated G. L. c. 93A, § 11 (1990 ed.). The plaintiff alleged that the buyer tortiously interfered with the plaintiff's contractual and advantageous business relationship with Federal-Mogul, and also violated G. L. c. 93A, § 11 (1990 ed.).

Following a jury-waived trial, bifurcated as to liability and damages, the trial judge issued extensive findings and rulings in the plaintiff's favor. The judge awarded the plaintiff approximately $10,200,000 in damages for his "lost opportunity" to own the division; double damages under G. L. c. 93A; interest in the amount of approximately $9,600,000; and attorney's fees of approximately $2,500,000. The total damages amounted to over $32,500,000.

Both defendants appealed, and the plaintiff cross appealed from "all rulings, orders and decisions adverse to his interests." The Appeals Court reversed the judgment and remanded the action to the Superior Court. *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 417 (1991). The Appeals Court held that: (1) an obligation to negotiate in good faith means that neither party may enter into the preliminary agreement for some ulterior purpose, and that Federal-Mogul satisfied this obligation, *id.* at 396-405; (2) a draft agreement entered into between Federal-Mogul and the buyer did not constitute an enforceable offer which triggered the plaintiff's right of first refusal, *id.* at 406; (3) certain misrepresentations made by Federal-Mogul to the plaintiff were not actionable because the plaintiff did not rely on them to his detriment, *id.* at 410-412; (4) two other misrepresentations by Federal-Mogul to the plaintiff were actionable under both common law fraud and G. L. c. 93A, *id.* at 411-412,

415-416; (5) the facts found by the judge did not warrant the conclusion that the buyer had tortiously interfered with the plaintiff's relationship with Federal-Mogul, *id.* at 412-413; and (6) with the exception of the two misrepresentations by Federal-Mogul, neither Federal-Mogul nor the buyer engaged in unfair or deceptive acts in violation of G. L. c. 93A, § 11, *id.* at 413-416. The Appeals Court, in reversing the judgment, remanded the case for consideration of damages and attorney's fees allocable to Federal-Mogul's two misrepresentations and the damages which flowed therefrom. *Id.* at 417.

This court granted the plaintiff's application for further appellate review. After a careful review of the record and arguments of counsel, we conclude that, while we agree with the Appeals Court's result, we do have some significant differences with that court's reasoning. We remand this case for consideration of damages and attorney's fees in accordance with the Appeals Court's decision. We also respond briefly to those areas of the Appeals Court's opinion with which we disagree without repeating the facts which are generously set forth in that opinion.

1. *The obligation to negotiate in good faith.* Both the trial judge and the Appeals Court concluded that the stated intention of the plaintiff and Federal-Mogul "to proceed in good faith in the negotiation of . . . a binding definitive agreement" constituted a contractual obligation in spite of the parties' preceding disclaimer.[2] 31 Mass. App. Ct. at 396. The

---

[2]The relevant portions of the parties' letter of intent are as follows: "Of course, this letter is not intended to create, nor do you or we presently have any binding legal obligation whatever in any way relating to such sale and purchase other than (i) with respect to the cost of appraisers and the review of OSHA compliance and repairs to remedy flooding . . . and (ii) those arising from the Confidentiality Agreement . . . . No further obligation will arise until a definitive agreement is reduced to writing and executed by you, the New Corporation and us and then only to the extent provided for and subject to the terms and conditions (e.g., approval of our Board of Directors) which may be set forth therein.

"However, it is our intention, and, we understand, your intention immediately to proceed in good faith in the negotiation of such binding definitive agreement. . . .

courts differed, however, on whether Federal-Mogul violated this alleged duty to negotiate in good faith. We believe, however, that it is not necessary to determine what constitutes an obligation to negotiate in good faith or whether Federal-Mogul breached any such obligation, because we conclude that the parties did not bind themselves contractually to any such obligation.

It is a settled principle of contract law that "[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract." *Kuzmeskus* v. *Pickup Motor Co.*, 330 Mass. 490, 493 (1953). *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.*, 312 Mass. 501, 506 (1942). *Wellington* v. *Apthorp*, 145 Mass. 69, 74 (1887). It is also elementary that an unambiguous agreement must be enforced according to its terms. *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 516 (1970). There is no ambiguity in the letter of intent between the plaintiff and Federal-Mogul. The parties clearly stated certain contractual commitments to which they were binding themselves and, just as clearly, they followed those commitments with an expression of their intention to proceed to negotiate in good faith. That this expression of intent follows the parties' disclaimer of binding effect and begins with the

---

"No public or private announcement to the employees of the [division] or others shall be made without our prior consent. A mutually agreed upon public announcement of the proposed transaction will, however, be made not later than the signing of the definitive agreement.

"It has been agreed that we are under no moral or legal obligation to refrain from negotiating the sale of the [division] with others until the definitive agreement has been executed. However, should any firm offer to purchase such business be made to us by a third party before December 1, 1980, you will have a right of first refusal to purchase such business on the same terms and conditions contained in such offer. Such right shall be exercisable by you by delivery to us of written notice of such exercise on or before the 15th day following our delivery to you of a writing setting forth such terms and conditions."

The parties later extended the right of first refusal to January 15, 1981.

word "however" does not elevate its status from a mere expression of intent into a binding obligation.[3]

2. *The right of first refusal.* Both the trial judge and the Appeals Court also concluded that Federal-Mogul was contractually bound to recognize that the plaintiff had a right of first refusal. 31 Mass. App. Ct. at 406. In contrast to the parties' written statement concerning good faith negotiations, Federal-Mogul's promise concerning the plaintiff's right of first refusal was far more than a mere expression of intention, see note 2, *supra,* and therefore we agree with the conclusion of the lower courts. The trial judge found that Federal-Mogul violated that duty, by failing to give the plaintiff an opportunity to purchase the division on the same terms as were set out in a January 8, 1981, draft memorandum initialled by Federal-Mogul and the buyer, because, concluded the trial judge, that memorandum constituted a firm offer.[4]

The Appeals Court, reversing the judge, concluded that the memorandum did not constitute a firm offer "because it contained a major hole pertaining to how the buyer would pay the purchase price, and the amount of that price, itself, was unresolved." *Schwanbeck v. Federal-Mogul Corp.,* 31 Mass. App. Ct. at 406. The Appeals Court reasoned that the memorandum was deficient with regard to the price because:

---

[3]We note that the contractual commitments in the letter of intent incorporated a binding covenant of good faith and fair dealing. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 473 (1991), and cases cited.

[4]The judge concluded that this memorandum constituted not only a firm offer but also a contract. The Appeals Court characterized the question on appeal as whether the memorandum constituted an "enforceable offer" or an "enforceable contract." *Schwanbeck* v. *Federal-Mogul Corp.,* 31 Mass. App. Ct. 390, 406 (1991). The plaintiff contends on appeal that a firm offer requires something less than that envisioned by the Appeals Court. The parties themselves did not define what they meant by a "firm offer," and this term is used frequently only in the Uniform Commercial Code, see G. L. c. 106, § 2-205 (1990 ed.), which is inapplicable to the present case. In the absence of any contractual definition, we conclude that a "firm offer" in these circumstances is an offer that, were it not for the plaintiff's right of first refusal, would be enforceable on Federal-Mogul's manifestation of acceptance of the terms of the offer. Cf. *Roy* v. *George W. Greene, Inc.,* 404 Mass. 67, 69-71 (1989).

(1) the memorandum did not specify which of Federal-Mogul's liabilities would be assumed by the buyer or the value of whatever liabilities the buyer would assume; (2) various economic terms within the memorandum varied from the terms of the agreement that Federal-Mogul and the buyer executed on February 2, 1981; and (3) neither the value nor the attributes of the preferred stock, which was contemplated as part of the purchase price, were addressed by the memorandum. *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. at 407-409. Once again, we agree with the Appeals Court's result although we disagree with that court's reasoning.

The first two reasons offered by the Appeals Court do not support a conclusion that the buyer did not make a firm offer to Federal-Mogul on January 8, 1981. Under the terms of the memorandum, whatever liabilities the plaintiff would have assumed from Federal-Mogul were to be deducted from the purchase price. The liabilities, therefore, would have had no net economic effect on the purchase price and their indefinite value did not affect the memorandum's status as a firm offer. Similarly, because the parties were free to modify the terms of the memorandum, that they did so does not mean that the initial memorandum was not a firm offer. See *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Mfg. Co.*, 202 Mass. 177, 182 (1909).

The memorandum's provision that the price was to include an undisclosed amount of stock at an undetermined value with unspecified attributes, however, standing alone, would have made the memorandum too indefinite to constitute a firm offer.[5] See *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 523 (1957). The judge found and the plaintiff contends, however, that any deficiencies in the memorandum were corrected by extrinsic evidence, specifically the parties'

---

[5]The memorandum stated: "The Purchaser shall deliver a certificate or certificates for _____ shares of its Preferred Stock (the "Preferred Stock"), which Preferred Stock shall have the attributes described in Exhibit Three to this Agreement." There was, at that time, no Exhibit Three to the memorandum.

notes and oral testimony, which established that the parties had arrived at a price of $300,000 for the preferred stock and that the basic features of the stock had been worked out. The Appeals Court, however, without explanation, did not consider the extrinsic evidence and concluded that whether the memorandum was enforceable was a question of law rather than fact. *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. at 406. The plaintiff asserts, in response to the Appeals Court's position, that, when evidence is of a mixed character, testimonial and documentary as was the situation in the present case, the fact finder's determination is subject to the more deferential, "clearly erroneous" standard of review. See *Bresky* v. *Rosenberg*, 256 Mass. 66, 75 (1926) (if evidence of contract consists of more than writings, question is for jury); *Gel Sys. Inc.* v. *Hyundai Eng'g & Constr. Co.*, 902 F.2d 1024, 1027 (1st Cir. 1990) (where trial judge relied on written agreement and extrinsic evidence, findings would be set aside only if clearly erroneous).

While we agree with the Appeals Court that whether the memorandum was a firm offer is a question of law, that conclusion requires some explanation in response to the plaintiff's persuasive arguments to the contrary. We have held previously that a person with a right of first refusal cannot exercise that right until "the owner has received a bona fide and enforceable (written) offer from a third party." *Roy* v. *George W. Greene, Inc.*, 404 Mass. 67, 70 (1989). Unarticulated in *Roy*, although critical to its reasoning, is the fact that the dispute in that case concerned an interest in land, a right of first refusal to purchase an automobile repair shop. See *id.* at 67-68. Any promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds, G. L. c. 259, § 1 (1990 ed.). As in *Roy*, the dispute in this case concerns both real and personal property, and, because the offer did not differentiate between the interest in land and the interest in personal property, the entire agreement fell within the Statute of Frauds. See *First Nat'l Bank* v. *Fairhaven Amusement Co.*, 347 Mass. 243, 245 (1964).

In order for Federal-Mogul to have had an enforceable offer from the buyer that would have satisfied the Statute of Frauds, Federal-Mogul would have had to prove not only an agreement, but also "a memorandum in writing containing the terms of that [agreement] in so far as [Federal-Mogul] seeks to enforce them." *Fichera* v. *Lawrence*, 312 Mass. 287, 288 (1942). See *Bouvier* v. *L'Eveque*, 324 Mass. 476, 478 (1949). "The price of a parcel of land is undoubtedly an essential element of a contract for its sale." *Shayeb* v. *Holland*, 321 Mass. 429, 432 (1947). We are of opinion, therefore, that the price offered by the buyer for the division was an essential element that Federal-Mogul would have had to prove by a writing in order to enforce the buyer's offer. We are satisfied that the price was too indefinite because of the undetermined value of the preferred stock in the written memorandum.

The judge's findings about the value of the preferred stock, since it was not contained in the written memorandum, would have had to have been based on extrinsic evidence. That the parties had written notes and conversations about the preferred stock is irrelevant because the offer, involving the sale of land, was clearly within the Statute of Frauds. We conclude, therefore, as a matter of law, that Federal-Mogul had no firm offer from the buyer prior to the expiration of the plaintiff's right of first refusal on January 15, 1981.

3. *Other issues.* Our conclusion, in accordance with the result reached by the Appeals Court, that Federal-Mogul did not breach any obligation to negotiate in good faith or the plaintiff's right of first refusal, similarly leads us to support the Appeals Court's determinations that Federal-Mogul's conduct did not require Federal-Mogul to negotiate past the expiration of the plaintiff's right of first refusal; that, with two exceptions, Federal-Mogul did not commit common law fraud; that the buyer did not tortiously interfere with the plaintiff's contractual and advantageous relationship with Federal-Mogul; and that, with the exception of Federal-Mogul's two misrepresentations, neither Federal-Mogul nor the buyer engaged in any unfair or deceptive acts in violation of

G. L. c. 93A. Consequently, there is no need to consider the plaintiff's argument on appeal concerning the judge's award of damages.

The judgment is reversed and the case is remanded for consideration of damages and attorney's fees in accordance with the opinion of the Appeals Court.

*So ordered.*