Howtek v. Relisys                    CV-94-297-JD  02/01/96  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Howtek, Inc.</u>

        v.                              Civil No. 94-297-JD

<u>Relisys, et al.</u>


O R D E R


The plaintiff, Howtek, Inc., brought this action against the defendants, Teco Information Systems, U.S.A., Inc., Teco Electric & Machinery Co., Ltd., Relisys, Inc., and Herman Hsu (collectively "Teco") alleging, <u>inter</u> <u>alia</u>, breach of contract, misappropriation of trade secrets, and unfair competition.  Teco Information Systems, Teco Electric & Machinery and Relisys[1] have filed a counterclaim asserting breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New Hampshire Consumer Protection Act.  Before the court is Howtek's motion for partial summary judgment on Teco's counterclaims to the extent those claims are based on Howtek's failure to negotiate with Teco in good faith (document no. 94).

---

[1]The court notes that Herman Hsu did not join in the counterclaim.  However, for convenience the court refers to both the named defendants and the counterclaim plaintiffs as "Teco."

<u>Background</u>[2]

In January 1989 Howtek and Teco entered into an agreement under which Teco was to manufacture "Scanmaster III" color scanners designed by Teco.  The agreement, which was to last for ten years and was renewable for additional five-year periods, provided that if Howtek determined

> to market products other than the [Scanmaster III] or
> determine[d] to market modified versions . . . which
> [were] improvements thereto, Howtek [would] negotiate
> in good faith for the manufacture by Teco of such other
> products for Howtek pursuant to the provisions of [the]
> [a]greement.

Manufacturing Agreement § 10.1.

At some point after the agreement was ratified, Howtek decided to market other scanning equipment.  Specifically, Howtek undertook to manufacture the "Scanmaster D7500," the "Scanmaster D4500," and the "Scanmaster 2500" on its own, without contacting or negotiating with Teco.  Teco did not learn about the existence of these scanners until after Howtek had manufactured them. Howtek also entered into agreements with other companies for the manufacture of the "Scanmaster D4000."  Affidavit of Herman Hsu ¶ 6.[3]

---

[2]The court's recitation of the facts relevant to the instant motion are either not in dispute or have been alleged by Teco.

[3]It is unclear whether TECO was ever made aware of Howtek's plans to market the Scanmaster D4000.

<u>Discussion</u>

Assuming, <u>arguendo</u>, that it failed to negotiate in good faith with Teco concerning the manufacture of products other than the Scanmaster III, Howtek argues that partial summary judgment is warranted on Teco's counterclaims because the provision in the manufacturing agreement requiring the parties to negotiate in good faith is unenforceable under New Hampshire law. In the alternative, Howtek contends that even if the clause is enforceable, Teco waived its right to enforce it by failing to object at an earlier date to Howtek's plans to market additional products.

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. <u>Rodriguez-Garcia v. Davila</u>, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. <u>Caputo v. Boston Edison Co.</u>, 924 F.2d 11, 13 (1st Cir. 1991).

A.    Enforceability of the Agreement to Negotiate

New Hampshire law, which governs the manufacturing agreement between Howtek and Teco, is silent as to the enforceability of agreements to negotiate.  The modern view, and the view endorsed by most scholars, is that agreements to negotiate in good faith, unlike mere "agreements to agree," are not unenforceable as a matter of law.  See, e.g., Channel Home Ctr. v. Grossman, 795 F.2d 291, 299 (3rd Cir. 1986) (letter of intent obligating landlord to negotiate with prospective tenant enforceable if it comports with other requirements of binding contract under Pennsylvania law); Thompson v. Liquichimica of America, Inc., 481 F. Supp. 365, 366 (S.D.N.Y. 1979) (clause obligating parties to use best efforts to come to agreement may be enforceable if parties intended clause to impose binding obligation); Itek Corp. v. Chicago Aerial Indus., Inc., 248 A.2d 625, 628 (Del. 1968) (letter of intent requiring parties to make reasonable effort to agree upon contract for sale of goods enforceable under Illinois law); J. Calamari & J. Perillo, Contracts § 2-9(a)(3) (3d ed. 1987); E.A. Farnsworth, Precontractual Liability and Preliminary Agreements: Failed Dealing and Failed Negotiations, 87 Colum. L. Rev. 217, 266-67.  But see, e.g., Ohio Calculating, Inc. v. CPT Corp., 846 F.2d 497, 501-02 (8th Cir. 1988) (deeming such agreements invalid under Minnesota law due to the impossibility

4

of calculating damages); <u>Candid Prods., Inc. v. International Skating Union</u>, 530 F. Supp. 1330, 1336-37 (S.D.N.Y. 1982) ("An agreement to negotiate in good faith is amorphous and nebulous, since it implicates so many factors that are themselves indefinite and uncertain that the intent of the parties can only be fathomed by conjecture or surmise."). Under the modern view, the critical inquiry in evaluating the enforceability of an express or implied agreement to negotiate in good faith is whether the standard against which the parties' good-faith negotiations are to be measured is sufficiently certain to comport with the applicable body of contract law. <u>See, e.g.,</u> <u>Channel</u>, 795 F.2d at 299; <u>Reprosystem, B.V. v. SCM Corp.</u>, 727 F.2d 257, 264 (2d Cir.) (although party might have been bound by agreement to negotiate in good faith, particular agreement was too indefinite to be enforceable under New York law), <u>cert.</u> <u>denied</u>, 469 U.S. 828 (1984); <u>Schwanbeck v. Federal-Mogul Corp.</u>, 592 N.E.2d 1289, 1292 (Mass. 1992) (agreement to negotiate in good faith not binding where parties did not manifest an intention to be bound by agreement). As this approach allows the court to apply specific principles of New Hampshire contract law, the court will consider whether the terms of the agreement in question are sufficiently definite to render them enforceable.

Under New Hampshire law, the terms of a contract need only

be reasonably certain to be enforceable.  Sawin v. Carr, 114 N.H. 462, 465, 323 A.2d 924, 926 (1974) ("pristine preciseness" not required); accord Restatement (Second) of Contracts § 32(1) (1981).  According to the Restatement, "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Id. § 32(2).

The fact that an agreement grants a party some degree of discretion in performing does not render the agreement unenforceable.  In such a situation, "the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting."  Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143, 562 A.2d 187, 193 (1989).  Thus, assuming the parties' intention to be bound, the implied covenant of good faith may supply standards, based on the parties' expectations, against which the exercise of discretionary authority under a contractual provision may be measured.

A meaningful standard for measuring compliance with the duty to negotiate in good faith will not always be easy or, in some cases, even possible to draw.  However, in the context of the complex manufacturing agreement before the court, to which the

commercially sophisticated parties involved clearly have manifested an intention to be bound, the court finds that the parties' express agreement to negotiate in good faith for the manufacture of additional products imposes at least some ground rules. Although such an agreement does not require either party to engage in an "unremitting effort[] to get to yes," Schwanbeck v. Federal-Mogul Corp., 578 N.E.2d 789, 795 (Mass. App. Ct. 1991), rev'd, 592 N.E.2d 1289, 1292 (Mass. 1992), it is "reasonably certain" that the agreement requires the designing party (1) to inform the manufacturing party of its intention to market new items in a related field; and (2) to possess a genuine willingness to entertain reasonable offers to manufacture new products. Cf. NLRB v. Reed & Prince Mfg. Co., 205 F.2d 131, 134 (1st Cir.) ("The question is whether it is to be inferred from the totality of the employer's conduct that he went through the motions of negotiations as an elaborate pretense with no sincere desire to reach an agreement if possible, or that it bargained in good faith but was unable to arrive at an acceptable agreement with the union."), cert. denied, 346 U.S. 887 (1953).

Having found that the agreement to negotiate at issue imposed some discernable standards on the parties, the court turns to its ability to fashion a remedy. As Howtek was never under any obligation to come to an agreement with Teco to

7

manufacture additional items, it may be difficult for Teco to prove that Howtek's failure to negotiate was the cause of Teco's detrimental reliance or lost profits.  See generally Farnsworth, supra, at 267 & n.210.  However, Teco's damages are not necessarily so speculative as to preclude the court from considering evidence on this subject and fashioning an appropriate remedy.  See Bezanson v. Fleet Bank-NH, 29 F.3d 16 (1st Cir. 1994) (damages based on chain of events that would have occurred but for breach, though "quite speculative," may be available under New Hampshire law if proven to a reasonable certainty); Farnsworth, supra at 267 n.210 (reliance damages should be available where breach and loss are clear). Accordingly, the court finds that the parties' agreement to negotiate is of a sufficiently definite nature as to be enforceable under New Hampshire law and denies Howtek's motion for partial summary judgment on this ground.


B.  Waiver

Under New Hampshire law, "waiver requires a finding of an actual intention to forego a known right."  Tothill v. Richey Ins. Agency, Inc., 117 N.H. 449, 454, 374 A.2d. 656, 659 (1977). To support its theory of waiver, Howtek argues that Herman Hsu, the special assistant to the chairman of Teco Information

8

Systems, "has admitted he never cared one way or the other" about Teco's right to manufacture additional products for Howtek. However, the deposition testimony upon which Howtek relies indicates only that Hsu did not regard the agreement to negotiate as the cornerstone of the agreement between Howtek and Teco. As Hsu's statements are insufficient to establish that Teco waived its right to enforce the provision at issue under New Hampshire law, the court declines to grant partial summary judgment to Howtek on this ground.

## Conclusion

Howtek's motion for partial summary judgment (document no. 94) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

February 1, 1996

cc:  Steven E. Grill, Esquire
     Richard V. Wiebusch, Esquire
     Nigel Nien-Tsu Li, Esquire

9