HaggertyThis matter was tried without a jury on April 20, 1999. I make the following Findings of Fact and Rulings of Law.
FINDINGS OF FACT
The plaintiff, Evans J. Carter, Esq. (“Carter”), has been an attorney in Massachusetts continually since 1968. On May 14, 1996, Carter met with defendant, William R. Baker (“Baker”) at the home of Baker’s sister and brother-in-law, Ann and Jay Flanders (“the Flanders”) in Chichester, New Hampshire. The Flanders were involved in a New Hampshire lawsuit against Fleet Bank pending in Merrimack Superior Court which was scheduled for trial on May 20, 1996. The Flanders were unhappy with the attorney who had been handling the case and wanted Carter to represent them. Baker was involved in the meeting in an attempt to assist his sister, Ann who suffered from a physical disability and his brother-in-law, Jay who had a mental problem.
*227 On May 14, 1996, the Flanders and Carter signed a contingency fee agreement which provided that the Flanders agreed to engage Carter in connection with their case against Fleet. The agreement contained the following language in regard to Baker: “(T]he final invoice shall be paid promptly by the Client and, if the entire unpaid balance due from the Client is unpaid after thirty (30) days, the Client agrees to pay the Attorney all expenses of collection, including reasonable attorneys fees and interest on the balance due at the rate of twelve (12%) percent per year; but in the event that the case is lost at trial, then the client will arrange with William Baker as executor of the estate of Ruth Baker to pay said final invoice from which is presently in Middlesex Probate Court (Massachusetts) as soon as adequate funds can be distributed therefrom.” Also on May 14 1996, Baker signed, as Executor of the Estate of Ruth R. Baker, a letter agreement drafted by Carter. The letter was addressed to Carter and stated the following: “In consideration of your agreeing to try the above-stated case for my sister and brother-in-law, I agree to pay your final invoice (based on hourly charges) from the Ruth Baker Estate funds that I am the executor for, as soon as said funds can be paid. I understand that if the trial is lost, I am the only source of payment for your legal services.” Carter gave copies of both the agreement and the letter to the Flanders and Baker.
Carter was admitted pro hoc vice and served as counsel to the Flanders in their case against Fleet. Prior to trial, on the advice of Carter, the Flanders settled their case against Fleet pursuant to which Flanders would pay $30,000 to Fleet. On January 31, 1997, the Flanders signed a release and a settlement agreement to that effect which was filed with the New Hampshire court. Baker was aware of Carter’s intention to settle the case prior to the disposition of the case.
On January 27,1997, Carter sent an invoice to both Flanders and Baker for 45.25 hours of legal services rendered at a cost of $11,321.00. The letter attached to the invoice indicated that it was a final bill and that Carter expected to receive compensation from Baker for the balance by June 1, 1997. On February 24, 1997, Baker sent Carter a letter, pursuant to a telephone conversation on January 29, 1997 asking Carter for a breakdown of the charges appearing on the January 27, 1997 invoice. On March 28, 1997, Carter mailed a letter signed on that date together with a corrected, audited final bill to Baker. The more detailed bill indicated that Carter was charging for 55 hours of legal services, not the 45.25 originally indicated and expected payment of $14,000 by June 1, 1997 or interest would begin to accrue at 12%. It fix. ther stated that while Carter was aware Baker would have preferred to go to trial, the settlement was the most advantageous course of action. On May 9, 1997, Carter sent Baker a letter reminding him that he expected to receive a check from the Flanders for full payment in May. On May 15, 1997, Carter sent a letter to Baker’s attorney, Michael Delaney, Esq., in which Carter asked Delaney to clarify Baker’s position regarding his obligation to pay Carter’s fee for the Flanders’ case. As claimed in the letter, Baker had telephoned Carter’s assistant and indicated he would not be responsible for the fee because the case was settled and not tried.
On June 3, 1997, Carter filed the present action for breach of contract (Count I) and quantum meruit (Count II) seeking to recover from Baker the $14,000 for legal services and expenses in the Flanders’ case.
RULINGS OF LAW
A. Breach of Contract
In the present case, the facts establish that the May 14, 1997 letter, signed by Baker, outlining his promise to pay Carter formed a valid and enforceable contract. See Greaney v. McCormick, 273 Mass. 250, 252-53 (1930) (where a contract is formed by an offer and acceptance, setting forth with certainty the material terms of the agreement): Wit v. Commercial Hotel Co., 253 Mass. 564, 572-73 (1925) (where valid consideration involves a benefit to the promisor or a detriment to the promisee). The language of the present contract is plain and unambiguous: Baker was required to pay Carter’s fee for legal services rendered to the Flanders in their case against Fleet Bank if Carter tried the case and lost. Consequently, the agreement between the parties must be enforced according to these terms. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992) (where an unambiguous contract must be enforced according to the ordinary meaning of its terms).
According to the agreement, Baker’s duty to pay Carter was conditioned on and did not arise unless Carter tried the Flanders’ case and lost at trial. Tilo Roofing Co. v. Pellerin, 331 Mass. 743 (1954). Since Carter did not try the Flanders’ case, Baker’s duty to pay Carter was never triggered. Consequently, Carter cannot recover on his contract claim. Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. 39, 45 (1991) (“A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. If the condition is not fulfilled, the contract or the obligations attached to the condition, may not be enforced”).
To the extent that there is any doubt about the provisions of the agreement between the parties, that meaning of the document must be construed against Carter. “(T]he meaning of a written document, if placed in doubt, is construed against the party that wrote it.” Scudder v. Dolinsky, 45 Mass.App.Ct. 925, 926 (1998) (citation omitted). “(T]he principle surely counts double when the drafter is a lawyer writing on his or her own account to a client.” Beatty v. NPCorp., 31 Mass.App.Ct. 606, 612 (1991). Accordingly, if there is *228 any doubt about the meaning of the terms of the agreement, it must be construed against Carter. Thus, he cannot recover on his breach of contract claim.
B. Quantum Meruit Claim
Baker’s promise to pay as outlined in the letter establishes the existence of an agreement and sets forth the conditions under which Baker was required to pay Carter for his legal services. Thus Carter’s quantum meruit claim is unavailing. Scudder, supra. Moreover, the underlying basis of awarding damages in a quantum merit claim “is unjust enrichment of one party and unjust detriment to the other party.” Salamon v. Terra, 394 Mass. 857, 859 (1985). Here, Baker was not unjustly enriched.
CONCLUSION
I conclude that the plaintiff is not entitled to collect his attorneys fees from the defendant. Judgment shall enter for the defendant.