Cratsley, J.
INTRODUCTION
The plaintiff, Flag Wharf, Inc. (“Flag Wharf’), has filed a Motion for Partial Summaiy Judgment pursuant to Mass.R.Civ.P. 56 regarding Count I of this action. Flag Wharf seeks a declaration that actions taken by the defendants, Carol Hickney et al., as they are the Board of Managers of the Flagship Wharf Condominium Association (the “Board”),[1] regarding the return of surplus parking revenue are in violation or breach of the provisions contained in the condominium Master Deed. Additionally, Flag Wharf seeks a declaration requiring the defendants to comply with its interpretation of the Master Deed relative to parking charges. The Board has filed a Cross-Motion for Summaiy Judgment seeking a favorable interpretation of the Master Deed and also asserting that any of the plaintiffs claims that pre-date 1997 should be barred by the statute of limitations. Each party thus contends that its legal position entitles it to judgment as a matter of law. For the reasons stated below, the plaintiffs motion is ALLOWED. Accordingly, the defendant’s Cross-Motion is DENIED.
BACKGROUND
All of the following facts are taken from the summary judgment record, which consists of any pleadings, depositions, answers to interrogatories, affidavits and admissions on file.
The defendants are duly elected or appointed members of the Board, the acting organization of unit owners for the Flagship Wharf Condominium (the “Condominium”). The Condominium, located in Charlestown, MA, was created pursuant to M.G.L.c. 183A by Master Deed on March 27, 1990 and recorded at the Suffolk County Registry of Deeds at Book 16189 and Page 91.
The Condominium contains a five-story parking garage (the “garage”) as one of its common elements. Parking easements have been granted to various third parties (“easement holders”) for 400 of the 516 parking spots located within the garage. Some, though not all, of the easement holders are owners of the Condominium units. The remaining 116 parking easements are granted to owners of the condominium’s two commercial units. The commercial unit owners are given “commercial parking easements” which are held in common with the general public. The easements are granted pursuant to a G.L.c. 91 license, which gives the general public the right to park in 100 of the garage spaces for which they pay an hourly or a monthly rate. The revenue generated by these spaces is considered “transient parking” revenue. Flag Wharf, which is not a Condominium owner, alleges that it owns 121 of the 400 non-commercial parking easements.
The dispute between the parties relevant to the cross motions before this Court centers on differing interpretations of provisions contained in the Master Deed, particularly those found in Article 6, §6(C) (iii), p. 22. These provisions (1) define transient parking income and dictate the manner in which it shall be used, (2) determine whether or not to collect additional parking fees from the easement holders, and (3) set out if and when those fees should be returned to the easement holders. Article 6 of the Master Deed states, in relevant part:
Each Unit Owner or Non Unit Owner having a Parking Easement. . . shall be liable for the portion of the Parking Costs equal to the amount obtained by subtracting all transient parking revenues from Parking Costs and then dividing thereof by the total number of parking spaces for which Parking Easements have been granted.
(Master Deed, Article 6, §6C(iii), p. 22.)
In the event that transient parking revenues exceed parking costs, any excess shall, after provision for reserves, be distributed pro rata to each [holder of a parking easement].
Master Deed, Article 6, §6(C)(iii), p. 22. “Parking costs” are defined as:
[T]he costs and expenses . . . incurred in the maintenance and operation . . . applicable to the garage and the repair and/or replacement of portions or facilities thereof. . . and may include reserves.
Master Deed, Article 6, §6C(iii), p. 22.
Because the Board can never be sure of the income the garage will generate or the costs it will incur at the outset of the year, it relies on estimates as a part of its budgeting process pursuant to the Master Deed, Article 6, §6C(iii), p. 22. If the Board estimates that parking costs will exceed transient parking revenues it issues a monthly parking assessment to easement holders to account for the estimated difference. The Board has made such an assessment for each year relevant to this lawsuit, 1991 to 2002. The total garage income has exceeded expenses in all but four years of those years and has generated a total surplus of $606,344 during that time. The Board has never redistributed any funds to easement holders.
The Board has included a provision for garage reserves as a projected expense in the budget since 1997. Additionally, each year since 1997 the Board has “revisited” the issue of garage reserves at the end of the year after it has determined that the parking garage has generated surplus revenue.
In June 2003, at the request of the Board, Noblin & Associates, L.L.C. (“Noblin”) conducted a capital needs and reserve budget analysis of the parking *323 garage. Noblin determined that $761,264 dollars would be needed for future repairs and replacement.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and a party is entitled to judgment as a matter of law.[2] Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by “demonstrating that proof of that element is unlikely forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), accord Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
This case involves the interpretation of Condominium documents, most particularly the Master Deed. Interpretation of a contract or an agreement is a question of law. Lumber Mutual Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). When interpreting a contract, the Court must look at the contract as a whole. See Starr v. Fordham, 420 Mass. 178, 190 (1995) (“the scope of a party’s obligations cannot ‘be delineated by isolating words and interpreting them as though they stood alone’ "), quoting Comm’r of Corporations & Taxation v. Chilton Club, 318 Mass. 285, 288 (1945). “It is also elementary that an unambiguous agreement must be enforced according to its terms.” Schwanbeck Federal Mogul Corp., 412 Mass. 703, 706 (1992). Any ambiguity should be construed against the drafters of the contract. See Cody v. Conn. General Life Ins. Co., 387 Mass. 142, 146 (1982) (stating that any ambiguity in an insurance contract should be construed against the insurer).
The crux of the plaintiffs claim is that the Board has breached the Master Deed by failing to return surplus garage revenues, including monthly parking assessments, to easement holders. The plaintiffs interpretation of the Master Deed is centered on the proposition that the garage is meant to be self-sufficient and easement holders should not be assessed an additional monthly charge if the transient parking income is sufficient to cover costs. Flag Wharf disagrees with the Board’s defense that it is entitled to “revisit” the issue of reserves at the end of the year. Reserves are a part of parking costs and, according to Flag Wharf, the proper time for allocating reserves is at the beginning of the year as a part of the budgeting process.
In its defense, the Board has asserted that it is entitled to broad discretion in retaining surplus revenue. It argues that there is nothing in the Master Deed that prohibits it from revisiting the issue of reserves at the end of the year and, therefore, it may retain any surplus and place the funds into reserve account if it so chooses. Based on the language of the document as a whole, and for the reasons discussed below, this Court declines to endorse the reading of such broad discretion into the Master Deed.
STATUTE OF LIMITATIONS
In its Cross-Motion for Summary Judgment the Board argues that any breach of the Master Deed that has been alleged to occur before June 26, 1997 is barred by the six-year statute of limitations applicable to contract actions. According to the Board, a dispute over a breach of the Master Deed is one for a breach of contract and a six-year statute of limitations begins to accrue at the time of the breach. Because Flag Wharf contends that the Board failed to distribute surplus revenues at the end of each year in question, it is possible to distinguish each breach on a year-to-year basis. According to the Board, only those claims arising after June 26, 1997 should remain in the case.
Flag Wharf, however, asserts that the appropriate statute of limitations is twenty years, rather than 6, because the deed was executed under seal. The plaintiff has directed the Court’s attention to M.G.L c. 260 §1, titled, Limitation of Twenty Years, which states, in relevant part:
The following actions shall be commenced only within twenty years next after the cause of action accrues:
First, Actions upon contracts under seal.
M.G.L c. 260, §1
It is apparent from the Summary Judgment record that the Condominium Master Deed was executed under seal on March 27, 1990. The cases cited by the plaintiff, most particularly Locke v. Spaulding, 24 Mass.App.Ct. 977 (1987), as well as those cited under M-G.L.c. 260, §1, convince this Court that this action is one regarding a deed executed under seal and, therefore, should be governed by a twenty-year statute of limitations. Thus, the statute of limitations does not bar recovery for any of the claims brought by the plaintiff in this case.
THE MASTER DEED Parking Assessments
The Master Deed unambiguously states that monthly parking assessments are to be made to easement holders to cover the difference between parking costs and transient parking revenue. Master Deed, Article 6, §6C(iii), p. 22. This provision creates the logical inference that the assessments should not be *324 made unless they are necessary to cover costs, particularly when transient parking revenue does not cover parking costs. As a practical matter, the Board has made estimates at the beginning of eveiy year regarding the garage’s expected income and parking costs, as well as whether an assessment would be necessary. This practice allows the Board to call for assessments to easement holders every year, which it has done since at least 1991, regardless of the ultimate need based on the final figures for that fiscal year.
This Court interprets the Master Deed to require that the assessments made at the beginning of the year based on estimates be returned in full or in part at the end of the year depending on two circumstances; first, whether the parking costs exceed transient parking revenues and, second whether all or part of the assessments are necessary to cover the difference between the two. This proposition follows logically from the requirement in the Master Deed that assessments not be made in a fiscal year that ends with a transient parking surplus. The only reason revealed in the record for why an assessment occurs in such a year is as the result of the need to estimate the yearly budget ahead of time. Thus, for any year in which an assessment has been made, the Board must return any portion of the assessment except that which is necessary to cover the difference between parking costs and transient parking revenue if it is determined that such a need exists at the end of the year.
Parking Reserves
If this Court were to accept the Board’s idea that it can set aside reserves at the end of the year under its discretion, then the Board would potentially never have to return any funds to easement holders. Such a system based solely on the discretion of the Board is vulnerable to exploitation in the following manner: Given that reserves are considered to be a part of parking costs, under the current system, the Board can exhibit a measure of control over what the ultimate parking costs will be. If the Board so wished, it could make assessments to easement holders based on a high estimate of costs it developed at the beginning of the year, and it would never have to return any of the money at the end of the year despite the fact that the assessments may not have been warranted. This is possible because, to some degree, the Board can inflate the measure of parking costs over and above transient parking revenues by adding any surplus to the reserves at the end of the year. The ability to add reserves at the end of the year serves as a means of controlling the parking costs and thus the amount of money due to the easement holders. There is no evidence in the summary judgment record, and thus no suggestion of an issue of fact, that the drafters of the Master Deed envisioned that such a system could or should exist.
Further, the practice of revisiting reserves does not make sense when viewed in the context of the Master Deed as a whole. A reading of Section 6(c) (iii) of the Master Deed indicates to this Court that the budgeting process relating to the garage, including the estimation of parking costs arid transient income as well as the process of making assessments to easement holders, is to be done once a year if the Board deems necessary, but not a second time during any one fiscal year. The section reads, in part: “Parking Costs may be estimated annually as provided in the By-Laws and may include reserves as set forth in the By-Laws.” Master Deed, §6(c)(iii) (emphasis added). The reference to “By-Laws” refers to the Condominium By-Laws, which also makes reference to parking costs made “during any fiscal year.” Condominium By-Laws, §6.2. Finally, the Merriam-Webster Online Dictionary defines “annual” as “1. covering the period of a year annual rainfall, 2. occurring or happening every year or once a year. YEARLY an annual reunion. Merriam-Webster Online Dictionary at http://www.m-w.com, accessed on July 29, 2004. (Emphasis added.)
Given this language, it is the opinion of this Court that the assessment of reserves should be made once every year if the Board deems it necessary as a projected expense in the budget. Adopting this system is more logical and consistent with the Master Deed than the current practice of revisiting the issue of reserves at the end of the year, and it allows for greater accountability regarding the parking assessments and any surplus transient parking revenue. It is obvious that if the Board wishes to increase its reserves at any time, it can do so as a part of its estimation of costs for the following year.
Monthly Parking Passes
As a separate and independent consideration from the issue of its general discretion, the Board argues in support of its cross motion for summary judgment that the prerequisite conditions for distributing excess funds have never been met. It asserts that transient parking revenues alone have never exceeded parking costs in any year relevant to this action and, therefore, according to the language of the Master Deed, Article 6, §6C(iii), p. 22, the easement holders have never been entitled to a return of any excess funds. This proposition is problematic for two reasons: First, as discussed above, parking costs may have been inflated by the addition of reserves at the end of each year since 1997, making it unclear whether transient parking income would have otherwise exceeded parking costs. Second, this Court is persuaded as a matter of law that monthly parking passes, issued by the board since 2000, should be included in the transient parking figures. This issue is clearly relevant to whether or not transient parking figures' have been under-reported due to the omission of the revenue brought in by the passes.
*325 The Board asserts that the majority of the garage surplus ($415,933 of $606,344) has been generated by these monthly passes rather than by the hourly parking or the parking assessments and, therefore, the easement holders are not entitled to a return of those funds as monthly pass income is not “transient.” However, this Court finds that monthly passes should not be excluded from the measure of transient parking revenue. Transient parking revenue is defined in Article 12 of the Master Deed, which states, in relevant part:
Charges paid for the use of spaces in the Parking garage by those making use of the same under or by virtue of the Chapter 91 license or the Commercial Parking Easement and all other hourly parking charges shall constitute property of the Board, shall be included in transient parking revenues under Section 6C(iii) and shall be accounted for as provided in Section 6C(iii) hereof.
Master Deed, Article 12, p. 30.
Based on the plain language of this section, it is obvious that transient parking revenue consists of more than just hourly parking charges, despite the argument made to the contrary in the defendants’ Memorandum of Law. This Court interprets this section to mean that any charges paid for the use of spaces granted under the Chapter 91 license or the commercial easements are to be considered as a part of transient parking revenue. Although the Master Deed is silent on the issue of monthly passes, this Court concludes from the summary judgment record that the Board is simply issuing monthly passes to the public as an alternative to paying the hourly rate. See Affidavit of Kenneth S. O’Brien, ¶¶9, 10. Therefore, since the spots subject to the monthly passes are issued as part of those spots granted under the Chapter 91 license, the revenue generated by them should be included in transient parking revenues.
CONCLUSIONS
For the reasons discussed above, it is the decision of this Court that the statute of limitations for this action is twenty years, as it is an action over the interpretation of a Master Deed created under seal. This Court also concludes as a matter of law that the Master Deed calls for parking assessments to be made to easement holders only when necessary to cover the difference between transient parking revenue and parking costs. In order to remain consistent with the text of the Master Deed, which states that parking assessments are issued each year on the basis of need, any estimated parking assessment should be returned at the end of the fiscal year if that need is not found to exist. As a matter of law, the practice of revisiting the issue of reserves at the end of the fiscal year is outside of the Board’s discretion, as it is inconsistent with the language of the Master Deed. It also creates a potential problem, which is avoided if the Master Deed is strictly construed, regarding the inflation of parking costs, which, in turn, can disguise the need to return the parking assessments. Finally, this Court has decided that the monthly passes issued by the Board are to be considered as part of transient parking revenue as they are granted pursuant to the Chapter 91 license. To the extent that the Board has failed to abide by this Court’s legal interpretation of the Master Deed between the years 1991 and 2002, this Court declares that it is in breach of the same. Further, this Court declares that the Board must comply with the interpretation of the Master Deed discussed herein relative to parking charges from this point on.
ORDER
For the reasons stated, it is hereby ORDERED that the plaintiffs Motion for Partial Summary Judgment is ALLOWED. It is further ORDERED that the defendants’ Cross-Motion for Summary Judgment is DENIED. Counsel for both parties are to submit (1) a form of judgment to implement this summary judgment decision and (2) a proposal describing the scope of an assessment of damages hearing, both within 30 days.

The defendants are the residential members of the Board. There are also 3 commercial seats, which are controlled by Thomas Cannon, III. It is undisputed that the plaintiffs in this action are both under the common control of Thomas Cannon, III.

The defendants allege that there are issues of material fact regarding the number of parking easements held by the plaintiff and when the plaintiff acquired them. However, these factual issues are relevant to damages rather than the legal interpretation of the Master Deed. Thus, summary judgment is an appropriate stage in this litigation for an interpretation of the Master Deed.