SMS Financial V, LLC vs. Robert Conti, individually and
as trustee,[1] & others[2] (and a companion case[3]).


No. 05-P-1256.

Suffolk. October 18, 2006. - April 26, 2007.

Present: Cypher, Kantrowitz, & Cowin, JJ.

*Contract,* Performance and breach. *Consumer Protection Act,* Collection of
debt, Interest, Attorney's fees, Unfair or deceptive act. *Damages,* Interest,
Attorney's fees, Breach of contract. *Interest. "Anti-SLAPP" Statute.
Practice, Civil,* Interest, Discovery, Motion to dismiss, Attorney's fees.

In a civil action arising from a claim under a forbearance agreement entered
into between the defendants and the plaintiff's predecessor, the judge
properly granted summary judgment in favor of the plaintiff on the ques-
tion of the defendants' liability, where there were no genuinely disputed
questions of material fact regarding alleged breaches by the plaintiff's
predecessor, in that the failure of the plaintiff's predecessor to discharge a
certain mortgage was not a breach of the forbearance agreement, nor was
the fact that the predecessor did not notify the defendants of an address
change for purposes of forwarding payments; likewise, the predecessor's
erroneous statement of the balance due under the forbearance agreement
was not a breach. [742-744]

The judge in a civil action arising out of the defendants' failure to make pay-
ments pursuant to a forbearance agreement, in determining that the parties
did not intend a double recovery, properly admitted extrinsic evidence to
aid in interpreting the parties' intent as to the terms of the forbearance
agreement, and his award of actual damages based on the terms of the
promissory note in question avoided a penalty that would have resulted in
an unconscionable windfall to the lender [748-751]; further, the judge
properly concluded that the amounts awarded to the plaintiff should bear
interest at a rate of twelve percent from the dates of executions forward
[744-745].

[1]Of the Lynn Street Realty Trust.

[2]John Conti, individually and as trustee of the Brookline Street Realty
Trust, also known as the 93-95 Brookline Street Realty Trust; Peter R. Conti,
trustee of the Conti Family Realty Trust; New England Bridge, Inc.; and Ever-
ett Aluminum, Inc., also known as Everett Aluminum Products, Inc.

[3]John Conti, trustee of the Brookline Street Realty Trust, also known as the
93-95 Brookline Street Realty Trust; Robert Conti, trustee of the Lynn Street
Realty Trust; and Peter R. Conti, trustee of the Conti Family Realty Trust *vs.*
SMS Financial V, LLC.

In a civil action claiming abuse of process and violation of G. L. c. 93A arising out of a lender's attempts to secure and collect the amounts owed under a forbearance agreement entered into between borrowers and the lender's predecessor, the judge properly denied a motion to compel the lender to provide discovery responses, where summary judgment granted in favor of the lender in a separate action on the borrowers' liability under the forbearance agreement adjudicated the abuse of process and violation of G. L. c. 93A allegations unfavorably to the borrowers and rendered further discovery on the borrowers' complaint purposeless. [745]

In a civil action claiming abuse of process and violation of G. L. c. 93A arising out of a lender's attempts to secure and collect the amounts owed under a forbearance agreement entered into between borrowers and the lender's predecessor, the judge properly granted a special motion to dismiss in favor of the lender on the abuse of process claim, but should also have allowed the motion on the claim of deceptive trade practices, where the activity giving rise to that claim — the lender's employment of legal mechanisms to obtain trustee process attachments and approval of foreclosure of certain real estate mortgages — plainly constituted petitioning activity [745-747]; however, having denied the special motion to dismiss with respect to the G. L. c. 93A claim, the judge correctly granted summary judgment in favor of the lender [747-748]; on the other hand, the judge erred in awarding attorney's fees to the lender, where the award included a component that had already been awarded to the lender in connection with a separate action [747].

This court permitted the prevailing party in a civil action to apply for an award of appellate attorney's fees and expenses, where the forbearance agreement underlying the action contemplated such an award. [751]

CIVIL ACTION commenced in the Superior Court Department on June 18, 2002.

A motion for summary judgment as to liability was heard by *S. Jane Haggerty*, J., and the claim for damages was heard by *Ralph D. Gants*, J.

CIVIL ACTION commenced in the Superior Court Department on September 19, 2002.

A special motion to dismiss on the abuse of process claim was heard by *Charles J. Hely*, J.; a claim under G. L. c. 93A was heard by him on a motion for summary judgment, and a motion for attorney's fees was also heard by him.

*Thomas S. Francis* for John Conti & others.

*Robert L. Hamer* for SMS Financial V, LLC.

COWIN, J. We consider cross-appeals from judgments in two consolidated cases arising from a claim by SMS Financial V, LLC (SMS), under a forbearance agreement entered into between

John Conti and related parties[4] (collectively, the Conti parties) on the one hand, and a predecessor of SMS on the other. The complaint of SMS in the Superior Court generated judgments in SMS's favor that totaled $526,550.14 together with twelve percent annual interest. The complaint filed by the Conti parties alleging abuse of process and violation of G. L. c. 93A terminated in favor of SMS by means of the allowance of a special motion to dismiss the abuse of process claim, see G. L. c. 231, § 59H, and a summary judgment on the claim under G. L. c. 93A.

In their appeal, the Conti parties assert that (1) it was error to enter summary judgment on liability in favor of SMS under the forbearance agreement because there were, at a minimum, genuinely disputed questions of material fact regarding alleged prior material breaches by SMS's predecessor[5]; (2) a twelve percent interest rate should not have been applied to amounts due under the forbearance agreement; (3) it was an abuse of discretion to deny their motion to compel discovery in their case alleging abuse of process and violation of G. L. c. 93A; (4) SMS's special motion to dismiss under G. L. c. 231, § 59H, should not have been allowed with respect to their claim for abuse of process, and, in any event, the attorney's fee award on the motion was excessive; and (5) it was error to grant summary judgment in favor of SMS on the Conti parties' c. 93A claim. In its appeal, SMS challenges the amount of the award of damages it received for the Conti parties' breach of the forbearance agreement. SMS also seeks an award of attorney's fees and costs with respect to this appeal. See *Fabre* v. *Walton,* 441 Mass. 9, 10-11 (2004). With the exception of the award of attorney's fees in connection with SMS's motion to dismiss under G. L. c. 231, § 59H, we affirm the judgments.

1. *Material facts.* The material facts are not disputed. Various loans made to the Conti parties by USTrust, a Boston bank, went into default, and USTrust commenced, and obtained judgments

[4]Robert Conti; New England Bridge, Inc. (of which John Conti was president); Everett Aluminum, Inc. (of which Peter R. Conti was president); John Conti, as trustee of the 93-95 Brookline Street Realty Trust; Robert Conti, as trustee of the Lynn Street Realty Trust; and Peter R. Conti, as trustee of the Conti Family Realty Trust.

[5]The Conti parties appeal as well from the denial of their motion for reconsideration of the order granting summary judgment on that portion of the case.

in, three separate collection actions. On March 31, 1998, USTrust and the Conti parties entered into a forbearance agreement whereby USTrust agreed not to levy on executions on those judgments in return for an agreement by the Conti parties to pay a reduced amount over a period of time. Repayment terms required the Conti parties to pay a total of $333,973.17 by May 1, 2001, with $92,946.34 payable at the closing, and monthly installments of $4,438.90 for three years with interest at an annual rate of four percent under a five-year amortization schedule. In the event of a default by the Conti parties under the forbearance agreement, it was provided that the Conti parties "shall be immediately liable for the full amount owed under the Executions, with all post-execution interest then immediately due, as well as all attorney's fees incurred by the Bank in connection with [the underlying actions] and this agreement . . . and not yet reimbursed at the time of the default. The liability of the Defendants on the Executions after default and the ten-day grace period shall have the effect of creating a 'clawback' to the amount of the indebtedness evidenced by the Executions. . . . Notwithstanding the foregoing, any payments received from the Defendants prior to any default under the Repayment Terms[6] shall be credited against any amounts owing under the Repayment Terms, first to interest and then to principal."

The forbearance agreement provided further that the Conti parties would secure the debt by giving USTrust real estate mortgages on four properties. The mortgages would be discharged by USTrust sequentially as payments were made. Of particular importance to the present dispute is a provision that USTrust would discharge a mortgage on property at 19 Lynn Street, Chelsea, after the Conti parties had made the initial payment of $92,946.34 plus an additional $80,000.

By December, 1998, the Conti parties had made the required initial payment and regular monthly payments, at which time the payments were sufficient to bring about a discharge of the 19 Lynn Street mortgage. However, the mortgage was not discharged at this time. The Conti parties continued to make regular payments through December, 1999, by which time a total of

---

[6]The reference is to the forbearance agreement.

$261,813.24 had been paid.[7] In January, 2000, Robert Conti requested that USTrust inform him of the amount remaining due under the forbearance agreement. USTrust reported to him by letter dated January 7, 2000, that $95,536.47 remained to be paid. Although that figure appeared to be in error, and the Conti parties had determined themselves that the amount due was only $72,159.93, they made no inquiry or other effort to resolve the discrepancy.

At this point, USTrust was acquired by Citizens Bank. Although they had received no instructions to do so, the Conti parties forwarded their payment due in March, 2000, to Citizens Bank. The payment was returned to them on March 23, 2000, with no forwarding instructions. Robert Conti's effort to obtain forwarding instructions from USTrust was unsuccessful. The Conti parties thereupon determined that they would make no further payments until forwarding instructions were received. None were forthcoming, and the Conti parties made no further payments and no additional efforts to straighten out the confusion. In 2002, Citizens Bank assigned its rights under the forbearance agreement to SMS, and the present litigation commenced.

2. *Summary judgment on liability under the forbearance agreement.* Determining that the record compelled a finding that there was an unexcused failure on the part of the Conti parties to make required payments, a judge of the Superior Court allowed SMS's motion for summary judgment as to liability, deferring assessment of damages to a subsequent evidentiary hearing. The Conti parties argue that three prior material breaches on the part of USTrust excused them from performance, see *Ward* v. *American Mut. Liab. Ins. Co.,* 15 Mass. App. Ct. 98, 100 (1983); *Lease-It, Inc.* v. *Massachusetts Port Authy.,* 33 Mass. App. Ct. 391, 397 (1992), and that the judge erred in attempting to resolve on summary judgment factual disputes regarding the materiality of those prior breaches.

We conclude that the evidence of prior material breaches was insufficient to support a finding in favor of the Conti parties on the subject, see *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991), and that the judge determined correctly

---

[7]Certain of the periodic payments had been for more than the required amount.

that their failure to make payments after December, 1999, was unexcused. USTrust's failure to discharge the mortgage on 19 Lynn Street, Chelsea, immediately after the initial payment and an additional payment of $80,000 had been made, does not appear to have been a breach of the forbearance agreement of any kind, much less a material breach. The agreement specifies no time in which the discharge must be delivered, providing only that there shall be a discharge "after" the payment level is achieved. There is no evidence that the Conti parties ever sought issuance of a discharge or that its absence interfered with any transactions or economic opportunities. When it became apparent during this litigation that a discharge had not been issued, SMS produced one forthwith. The presence of a "time is of the essence" clause does not alter the outcome where no time for the performance of a particular act is specified. Even were failure to issue a discharge in 1998 to be deemed a breach, it can hardly be said that, given the benefits obtained by the Conti parties by means of the forbearance agreement, immediate availability of a mortgage discharge with respect to the 19 Lynn Street, Chelsea, property was an "essential and inducing feature" of the contract, see *Bucholz* v. *Green Bros. Co.*, 272 Mass. 49, 52 (1930), with a breach thereof thus being material.

Likewise, the fact that neither USTrust nor Citizens Bank notified the Conti parties of an address change for purposes of forwarding payments was not a breach, material or otherwise. The forbearance agreement contained no requirement that there be a notice of the lender's change of address.[8] The implied covenant of good faith and fair dealing concerns the manner in which contractual duties are performed; it does not create rights and duties not already present in the contractual relationship. See *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 385, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 546 U.S. 927 (2005).[9] Had the Conti parties continued to forward payments to the address set forth in the agreement, they would have been in full compliance. They chose instead a strategy of

---

[8]The agreement authorized the parties to send notices of changes of address, but did not obligate them to do so.

[9]In fact, the lender's change of address was irrelevant. The agreed-upon address for payment was what mattered.

doing nothing, neither paying nor inquiring further, and consequences followed.[10]

In the same way, USTrust's erroneous statement of the balance due in January, 2000, was neither a breach nor material. The forbearance agreement did not require that USTrust provide accountings. That USTrust provided a figure on request — a figure that turned out to be mistaken — is not a breach of any covenant that USTrust contractually undertook to fulfil. Furthermore, the Conti parties were aware that the number provided by the lender was erroneous; they made no attempt to reconcile the figures; and they knew that, regardless of which figure was correct, a substantial amount remained to be paid. The judge concluded correctly that none of the proffered actions or inactions on the part of USTrust amounted legally to material breaches sufficient to excuse the Conti parties from further payments.[11]

3. *Interest on the SMS judgment.* Following a hearing on the assessment of damages, another judge awarded SMS a total of $526,550.14 against various Conti parties. The amount is disputed (see part 7, *infra*). He concluded also that the amounts awarded should bear interest at a rate of twelve percent from the dates of the executions forward. The Conti parties challenge the ruling, arguing that the underlying promissory notes each provided for an interest rate less than twelve percent per annum.[12]

We agree with the ruling of the judge. General Laws c. 231, § 6C, as appearing in St. 1982, c. 183, § 3, provides, in pertinent part, that interest shall be added to a "judgment for

[10]We acknowledge the principle that impracticability of performance or frustration of purpose may suspend temporarily an obligor's duty to perform, or even discharge such duty if the obligor's performance has been made more burdensome. See Restatement (Second) of Contracts § 269 (1981); 9 Corbin, Contracts § 947 (1979) (contract contains implied promise by obligee not to prevent or hinder performance). The principle is inapplicable here, given that the Conti parties never attempted, following the sale of USTrust, to make payment as directed in the forbearance agreement.

[11]What we have said answers as well the contention of the Conti parties that the judge abused her discretion by denying reconsideration of the order allowing summary judgment on liability.

[12]One note provided for annual interest at two percent above USTrust's "base lending rate"; another at nine percent per annum; and the third at the USTrust base lending rate plus one percent.

pecuniary damages" on a contract obligation "at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand." While the original promissory notes contained specific interest rates, those notes are not the contracts on which SMS's action is based. Rather, the action is one for breach of the forbearance agreement, and pursuant to that agreement, it is for "the full amount owed under the Executions, with all post-execution interest then immediately due, as well as all attorney's fees incurred by the Bank." Because the judgments on which the executions were based did not set forth an interest rate, the judge who determined damages found that the twelve percent annual rate of G. L. c. 231, § 6C, applied to the executions. See G. L. c. 235, § 8, as appearing in St. 1983, c. 652, § 2 ("Every judgment for the payment of money shall bear interest from the day of its entry at the same rate per annum as provided for prejudgment interest . . .").

4. *Motion to compel discovery.* Alleging in their own action that SMS's attempts to secure and collect the amounts owed under the forbearance agreement constituted abuse of process and a violation of G. L. c. 93A, the Conti parties sought to compel SMS to provide discovery responses on the subject. At the evidentiary hearing on damages (see part 7, *infra*), the judge denied the motion, stating that "the matters alleged in the complaint [of the Conti parties] have been addressed and resolved [by the grant of summary judgment in the action brought by SMS on the forbearance agreement] and that collateral estoppel will bar them." The essence of the Conti parties' complaint is that SMS sought amounts substantially in excess of what was actually owed and availed itself of legal process to attempt to obtain the inflated amounts knowing that the Conti parties had legitimate defenses to SMS's claims. We agree with the judge that the summary judgment on liability under the forbearance agreement (affirmed in part 2, *supra*) adjudicated these allegations unfavorably to the Conti parties and rendered further discovery on the Conti parties' complaint purposeless.

5. *Special motion to dismiss.* SMS filed a special motion to dismiss the complaint of the Conti parties for abuse of process

and deceptive trade practices. See G. L. c. 231, § 59H (the "anti-SLAPP" statute). A third judge allowed the motion insofar as it related to the abuse of process claim, but denied it with respect to the c. 93A claim, reasoning that that claim was based in part on extrajudicial foreclosure proceedings that were not based on "petitioning" activity alone.[13] The judge was correct in allowing the special motion to dismiss the abuse of process claim, and should have also allowed the motion with respect to the allegations under c. 93A.

"The legislative history in Massachusetts demonstrates that in response to the problem of SLAPP suits the Legislature intended to enact very broad protection for petitioning activities." *MacDonald* v. *Paton,* 57 Mass. App. Ct. 290, 291 (2003), quoting from *Duracraft Corp.* v. *Holmes Prods. Corp.,* 427 Mass. 156, 162 (1998). The special movant must show that the claims against it are based on its petitioning activities alone, "and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.,* 427 Mass. at 167-168. Petitioning activities include statements submitted to a judicial body. See G. L. c. 231, § 59H; *McLarnon* v. *Jokisch,* 431 Mass. 343, 347 (2000). See also *Kobrin* v. *Gastfriend,* 443 Mass. 327, 331-340 (2005), for a discussion of the scope of petitioning activities under the anti-SLAPP statute. Once the moving party establishes that the claims arise out of its petitioning activities, the burden shifts to the adverse party to show that the activity complained of was "devoid of any reasonable factual support or any arguable basis in law." *Fabre* v. *Walton,* 436 Mass. 517, 524 (2002).

Here, SMS's employment of legal mechanisms to obtain trustee process attachments and approval of foreclosure of the real estate mortgages plainly constituted petitioning activity under the anti-SLAPP statute. There was no other basis for the claims. Consequently, the Conti parties had the burden of demonstrating that the petitioning activity (i.e., the trustee process and foreclosure proceedings) was devoid of reasonable factual support or arguable basis in law. Such a showing was

---

[13]The judge subsequently acknowledged that, at the time of the ruling, he had been unaware that SMS had in fact properly initiated foreclosure proceedings in the Land Court.

impossible given the circumstances. The forbearance agreement authorized SMS to pursue recovery immediately upon default plus a grace period of ten days. For there to be an abuse of process, "it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Ladd* v. *Polidoro*, 424 Mass. 196, 198 (1997), quoting from *Gabriel* v. *Borowy*, 324 Mass. 231, 236 (1949). Furthermore, it has been held that "something that has been established by a preponderance of the evidence cannot be devoid of any reasonable factual support or arguable basis in law." *Fabre* v. *Walton*, 436 Mass. at 524-525. It follows by necessary logic that the burden cannot be satisfied where the moving party is entitled to summary judgment. For the same reasons, the G. L. c. 93A claim arising out of SMS's effort to collect the debt cannot survive under G. L. c. 231, § 59H.

Pursuant to that statute, the judge properly awarded counsel fees to SMS. The Conti parties argue that the amount awarded ($4,621.25) included a component that had already been awarded to SMS in connection with its own complaint. SMS does not contest the proposition, contending instead that the award, even with its duplicative component, was reasonable and not an abuse of discretion. See *Galipault* v. *Wash Rock Invs., LLC*, 65 Mass. App. Ct. 73, 86 (2005). We fail to see how a fee award that exceeds the value of the services that the applicant itself determined can be anything other than unreasonable. The award appears to result from a mistake regarding the legal services for which there is to be compensation. We therefore vacate this portion of the judgment on the complaint of the Conti parties, and remand so that the fee award under G. L. c. 231, § 59H, may be reconsidered and, if appropriate, revised.

6. *Summary judgment on the G. L. c. 93A claim.* Having denied SMS's special motion to dismiss with respect to the claim of the Conti parties under G. L. c. 93A, the judge subsequently granted summary judgment thereon in favor of SMS. The judge concluded correctly that the evidence was insufficient to establish that SMS's conduct was unfair or deceptive. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716.

There was no basis for the claim by the Conti parties that SMS breached a duty of good faith and reasonable diligence in the foreclosure process, see *Sandler* v. *Silk*, 292 Mass. 493, 496 (1935), and committed an unfair or deceptive act or practice by "misrepresenting" the amount that it was owed under the forbearance agreement. If SMS were mistaken in calculating the amount in question (see part 7, *infra*), there was no evidence that it was other than a good faith error based on a literal reading of the language of the forbearance agreement. Even were SMS's claim the product of a negligent calculation, negligence without more does not constitute an unfair or deceptive practice under G. L. c. 93A. See *Meyer* v. *Wagner*, 429 Mass. 410, 423-424 (1999).

Nor are we persuaded by the contention of the Conti parties that there was a breach of the forbearance agreement on the part of SMS that amounted to an unfair act or practice. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991). We have disposed in part 2, *supra*, of the proposition that USTrust materially breached the agreement prior to the cessation of payments by the Conti parties, and have concluded in the present section that SMS's claims thereunder, while excessive, did not violate G. L. c. 93A. Finally, there is no merit to the Conti parties' claim that the obtaining of a preliminary injunction against foreclosure of the mortgages by SMS entitled them at least to attorney's fees as prevailing parties. Such a recovery requires a demonstration that there existed a specific unfair or deceptive trade practice for which the injunctive relief in question was granted. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989). There must be a showing as well that the unlawful act or practice "had some adverse effect upon [them], even if it is not quantifiable in dollars." *Ibid.* Neither of these conditions is present in this case, where the preliminary injunction issued because of the possibility of irreparable harm to the mortgagors from the foreclosures and for the purpose of maintaining the status quo pending a resolution that was ultimately in SMS's favor.

7. *Amount of judgment for the breach of the forbearance agreement.* We turn to the appeal of SMS in which it contends that the judge erred in not awarding as principal damages for

the breach of the forbearance agreement the entire amount of the three executions, less the amounts paid through December, 1999. SMS relies on the language of the agreement which provides that, in the event of a default by the Conti parties, those parties "shall be immediately liable for the full amount owed under the Executions." Elsewhere in the agreement, the term "Executions" is defined as "[t]he existing execution against Robert Conti" (on a judgment obtained by USTrust in Suffolk County); "the executions to issue against [Robert Conti and American Bridge Products, Inc.,] in the Essex Action [on a judgment obtained by USTrust in Essex County], . . . and the execution to issue against Robert Conti in the Third Suffolk Action" (on a judgment obtained by USTrust in a separate action in Suffolk County). Consequently, SMS argues that a literal reading of the forbearance agreement entitles it to the full amount of all three of the executions before amounts paid pursuant to the forbearance agreement are offset.[14]

The judge concluded otherwise. Admitting extrinsic evidence on the subject, he found that one of the collection proceedings (the Essex action) was actually an intervention on the part of USTrust in a proceeding between Robert Conti and American Bridge Products, Inc., and was undertaken by USTrust in an effort to preserve its position as a secured judgment creditor of American Bridge Products, Inc. The amount to be embraced by the execution in the Essex County case is the sum already due on one of the actions in Suffolk County, and thus represents a significant double counting when compared to the Conti parties' liability with respect to the original USTrust loans. The judge determined that the parties to the forbearance agreement did not intend that there be this kind of double recovery, and reduced the damages award accordingly.

We agree with the judge's interpretation. SMS argues that an unambiguous contract must be enforced in accordance with its terms, see *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992), and that evidence extrinsic to the contract should

---

[14]Specifically, the amounts of the executions sought by SMS were $304,811.63, $333,973.17, and $192,682.07, for a total of $831,466.87. After subtracting the amounts paid by the Conti parties under the forbearance agreement and adding postexecution interest, SMS's claim exceeds $1 million.

not have been received to show a different agreement or create an ambiguity, see *Governor Apartments, Inc.* v. *Carney,* 342 Mass. 351, 354 (1961). This mischaracterizes what the judge did. The judge did not at any point conclude that the agreement was ambiguous, and he did not receive evidence for the purpose of resolving an ambiguity or to create a different agreement. Rather, he quite properly took evidence not to vary the terms of the contract, but instead to aid in interpreting what the parties intended those terms to mean. See *Levin* v. *Century Indem. Co.,* 279 Mass. 256, 258 (1932) ("when the meaning of [a contract] . . . becomes doubtful in its application to the particular transaction," extrinsic evidence is admissible "to explain the significance of terms used or to show the relations and methods of the parties in the light of which their written words are to be interpreted"); *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 753-754 (1973) ("When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms"); *Keating* v. *Stadium Mgmt. Corp.,* 24 Mass. App. Ct. 246, 249 (1987) (contractual language need not be ambiguous on its face in order that extrinsic evidence be admitted).

SMS concedes that enforcement of the agreement's literal provisions would give it, in effect, a double payment on one of the underlying promissory notes. It argues, however, that the extra liability was a reasonable, bargained-for recourse in the event of a breach of the forbearance agreement by the Conti parties, particularly given that the borrowers had, by means of that agreement, eliminated their exposure to a G. L. c. 93A claim and multiple damages. We are not persuaded that this was what the parties intended. The forbearance agreement constituted a compromise of liabilities incurred by the Conti parties pursuant to identified promissory notes, and it is those liabilities that the parties apparently intended to enforce in the event that the compromise failed. Absent the forbearance agreement, USTrust and its successors could not have collected twice on one promissory note, and we do not read the agreement as purposefully creating such an entitlement.

We believe that the judge construed the agreement correctly for the additional reason that, interpreted as SMS suggests, the agreement provides for an unenforceable penalty in the event of a default. A provision calling for a double recovery on a promissory note in a principal amount that exceeded $300,000 is essentially a liquidated damages clause. Where liquidated damages are greatly disproportionate to actual damages arising from a breach, the liquidated damages are deemed a penalty and are not enforced. See *A-Z Servicecenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956); *Kelly* v. *Marx*, 428 Mass. 877, 880 (1999). The judge's award of actual damages based on the terms of the promissory note in question avoided a penalty that would have resulted in an unconscionable windfall to SMS at the expense of the Conti parties and was appropriate.

8. *Appellate attorney's fees.* The forbearance agreement provides that, in the event of a default by the borrowers, the lender is entitled to "all attorney's fees incurred by the Bank in connection with the Essex Action, Second Suffolk Action, Third Suffolk Action, and this Agreement and Related Documentation, and not yet reimbursed at the time of the default." We construe this entitlement to apply to appellate proceedings to the extent that SMS is the prevailing party. Accordingly, within fifteen days of the date of this opinion, SMS may file an application for an award of appellate attorney's fees and expenses limited to those portions of the appeal on which it has prevailed. The Conti parties may file an opposition within fifteen days of service of SMS's application. See *Fabre* v. *Walton*, 441 Mass. at 10-11.

9. *Disposition.* That portion of the judgment entered in Suffolk Superior Court civil action no. 02-4144 that awarded attorney's fees in connection with the special motion to dismiss filed by SMS under G. L. c. 231, § 59H, is vacated, and the case is remanded to the Superior Court for a redetermination of the amount of attorney's fees in accordance with this opinion. The remainder of that judgment is affirmed. The judgment entered in Suffolk Superior Court civil action no. 02-2666 is affirmed.

*So ordered.*