Greco, P.J.
This is an appeal by the plaintiff, Darlene Lobao ("Lobao”), of the allowance of summary judgment in favor of the defendants, Christopher J. Leahy (“Leahy”) and his employer, Millenium Engineering, Inc. (“Millenium”). Lobao’s complaint sought damages from both defendants for their alleged negligence and violations of the Consumer Protection Act, G.L.c. 93A. Lobao claimed that she hired Millenium to draw up a plan to show how her home in Salisbury could be connected to the town sewer system; that the plan Leahy prepared indicated that the gas line to her house was beside the town sewer line and would not, therefore, interfere with the sewer hook-up; that when her contractor began excavating, it was discovered that the gas line was not located where Leahy had indicated and was obstructing the connection to the sewer system; that to complete the hook-up required extra work, at an added cost; and that she was required to seek further financing to cover the added expense. Thus, Lobao sought reimbursement from the defendants for the cost of the second financing, as well as for unspecified “extra expenses” and attorney’s fees. Lobao also sought recovery for mental distress.
Based on the Mass. R. Civ. E, Rule 56, materials submitted to the motion judge, the following facts are not in dispute. Before drawing up his sewer connection plan, Leahy made several visits to the site. However, to determine the location of the gas line, Leahy relied solely on a map provided by Keyspan Energy Delivery (“Keyspan”), the utility that supplies gas to Lobao’s residence on Lafayette Road in Salisbury. Leahy never asked Keyspan to come out to the site and verify the location of the gas line. Nor did he request that a representative of the “Dig Safe Program” go to the site to locate the gas line. Instead, on the plan itself, Leahy indicated that “the contractor shall verify the location of existing utilities and shall coordinate with Digsafe at least 72 hours prior to excavation.” However, Millenium gives its homeowner-clients an information sheet that states that its “staff researches record information, schedules preliminary site evaluations and notifies contractors for DIG- *8 SAFE.” The Keyspan map utilized by Leahy did not accurately depict the location of the gas line; and, as noted, the gas line did, in fact, obstruct a hook-up of Lobao’s property to the town sewer system.
Lobao failed to offer any evidence to dispute Leahy’s assertions in his deposition that there was nothing to indicate to him that the Keyspan plan was incorrect, and that he had used the plan on other projects without encountering any problems.
According to Lobao’s January 15,2004 demand letter, the original cost of the project was estimated to be $15,000.00. Lobao claimed that she had to borrow an additional $8,000.00 (i.e., $7,500.00, plus $500.00 in attorney’s fees) to cover the cost of the extra work caused by the location of the gas line. It is not clear whether the $500.00 amount was the only cost incurred in connection with Lobao’s refinancing. In August of 2003, she had notified Millenium that it cost her $2,800.00 to refinance the project, a figure that seems implausible on its face. In response to Lobao’s demand letter, Millenium made “a written tender of settlement,” G.L.c. 93A, §9(3), in the amount of $1,695.00, which Lobao rejected.
To prevail on their motion for summary judgment, Leahy and Millenium were required, as the moving parties, to “show that there [was] no genuine issue as to any material fact and that [they were] entitled to a judgment as a matter of law.” Mass. R. Civ. E, Rule 56 (c). A moving party’s burden may be satisfied by demonstrating that proof of “an essential element of the plaintiff’s case ... is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “Summary judgment is seldom granted in a cause of action alleging reckless or negligent conduct, but this is not an absolute rule.” Nunez v. Carrabba’s Italian Grill, Inc., 448 Mass. 170, 174 (2007). See also Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 20 (1998).
1. The Negligence Claim. The following standard to which architects and engineers must adhere was set forth by the Supreme Judicial Court in Klein v. Catalano, 386 Mass. 701, 718-719 (1982):
Architects, doctors, engineers, attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random facts which are incapable of precise measurement. The indeterminable nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance.... Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.
Id. at 718-719, quoting Mounds View v. Walijarvi, 263 N.W.2d 420, 424 (Minn. 1978). Here, a mistake was made. However, that mistake, standing alone, would not necessarily have precluded the allowance of Leahy’s motion for summary judgment. The issue on summary judgment is whether Leahy demonstrated that Lobao will be unable to prove that he failed to “exercise ... that skill and judgment which can be reasonably expected from” an engineer asked to draw up a sewer connection plan. At least with respect to the negligence count, it does not matter that Lobao intended to connect to the town sewer line regardless of where the gas line was located, and that Leahy’s plan did not result in such action. Cf. Nota Constr. Corp., supra at 21.
*9 In seeking summary judgment, Leahy relies on the undisputed evidence that he visited the site; that he obtained from Keyspan “copies of available... maps and plans pertinent to the survey” as required by the Code of Massachusetts Regulations, 250 CMR 6.02(1) (a) (2); that he relied on those plans; and that he had relied on Keyspan’s plans in the past without experiencing a problem. He also correctly notes that the obligations imposed by G.L.c. 82, §40 et seq., the “Dig Safe” Law, do not apply to him. That law and the regulations promulgated under it, 220 CMR 99.00 et seq., require that an “excavator” notify “the underground plant damage prevention system,” G.L.c. 82, §40, of the area to be excavated, which notice will trigger the obligation of a company supplying gas to the site to “designat[e] the location of the underground facilities.” See G.L.c. 82, §40A and §40B. Leahy clearly was not an excavator, which is defined as “any entity... which performs excavation operations,” i.e., an operation involving the “movement or removal of earth, rock or the materials in the ground.” G.L.c. 82, §40.
However, Leahy testified in his deposition that the location of the gas line “would have been determined through ... visual observations, location of the gas meter, things of that nature,” which he did not do, but which he believed were done by somebody, although he did not know who. He also testified that he did not request Keyspan to go to the site and identify the location of the gas line, and that he did not know the age of the plan on which he relied. Such evidence raises a factual issue as to whether Leahy was negligent in simply relying on the Keyspan plan that had been archived, for however long, in his own office.
While this matter must be returned to the Newburyport District Court for trial on Lobao’s negligence claim, the scope of any trial on the issue of damages should be fairly limited. In her summary judgment materials, Lobao did not present a scintilla of evidence to support her allegation of mental distress. Also, she will not be able to recover any added expenses occasioned by the newly ascertained correct location of the gas line. She failed to allege that she would not have sought the initial financing and proceeded with the work if she had known of the correct location of the gas line. While it may have been disappointing to learn that the project would cost more than she had originally anticipated, the extra cost would have been incurred in any event. At best, Lobao may be able to recover any application fee for the additional financing she obtained and, possibly, some interest expense if the rate had increased in the few months between the two loans. “[Djamages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including ... (b) pecuniary loss suffered... as a consequence of the plaintiff’s reliance upon the misrepresentation.” Nota Constr. Corp., supra at 20 n.1, quoting Restatement (Second) of Torts §552B (1977). Lobao initially sought $1,695.00 for such losses, then $2,800.00. The figure seems to have become more realistic in her demand letter, i.e., $500.00. As noted, Lobao rejected the defendants’ offer to settle the entire case for the initial amount.
2. The Chapter 93A Claim. We affirm, however, the summary judgments entered for the defendants on Lobao’s G.L.c. 93A claim. “[Njegligence without more does not constitute an unfair or deceptive practice.” SMS Financial V, LLC v. Conti, 68 Mass. App. Ct. 738, 748 (2007), citing Meyer v. Wagner, 429 Mass. 410, 424 (1999). In this case, Leahy mistakenly relied on some old plans. Whether he was even negligent will be a close call at trial. There was certainly no conscious deception here; *10 there was no dishonesty. Fox v. F&J Gattozzi Corp., 41 Mass. App. Ct. 581, 587 (1996), quoting Restatement (Second) of Torts §552(1) comment a (1977) (“Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says.”).
The summary judgments for the defendants on the plaintiffs G.L.c. 93A claim are affirmed. The summary judgments for the defendants on the plaintiffs negligence claim are vacated, and the case is returned to the Newburyport Division of the District Court Department for trial on that claim.
So ordered.